THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KRISTY DOUGLAS and TYSHEKA
RICHARD, individually and on behalf of all
others similarly situated,

                Plaintiffs,

    v.

XEROX BUSINESS SERVICES, LLC, a
Delaware limited liability company;
LIVEBRIDGE, INC., an Oregon corporation;
AFFILIATED COMPUTER SERVICES,
INC., a Delaware corporation; AFFILIATED
COMPUTER SERVICES, LLC, a Delaware
limited liability company,

                Defendants.

NO. 2:12-cv-01798

**PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR CONDITIONAL
COLLECTIVE ACTION
CERTIFICATION**

Noted for Consideration:
November 20, 2013

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION
CASE No. 2:12-cv-01798

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwfaw.com

# TABLE OF CONTENTS

Pg.

I.    INTRODUCTION ...................................................................................................1

II.   REPLY ARGUMENT AND AUTHORITY ...........................................................1

    A.    Defendants Misstate the Standard for First-Stage FLSA Conditional
        Certification ................................................................................................1

    B.    Plaintiffs Have Demonstrated that They and the Proposed Class Members
        Are Subject to Common Plans and Policies that Allegedly Violate the FLSA .....4

        1.    The ABC Class Is Similarly Situated With Respect to
            Achievement Based Compensation ...........................................................6

        2.    The ABC Class Is Similarly Situated With Respect to Off-The-
            Clock Work ................................................................................................9

    C.    Defendants' Declarations Do Not Support Denial of
        Conditional Certification ...........................................................................11

    D.    Conditional Certification Cannot Be Denied on the Ground that
        Many Employees at Multiple Call Centers Have Been Affected
        by Defendants' Unlawful Practices ............................................................13

    E.    All Potential Class Members Were "Employed" by Defendant Xerox
        Business Services, LLC ..............................................................................15

    F.    The Court Should Strike the Improper "Summary" of Alleged Facts In
        Attorney Todd Nunn's Declaration ...........................................................17

    G.    Defendants' Motion to Strike Should Be Denied ......................................18

    H.    Equitable Tolling of the Statute of Limitations for Potential Opt-In
        Plaintiffs is Appropriate ............................................................................18

III.  CONCLUSION ....................................................................................................19

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - i
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

**FEDERAL CASES**

Pg.

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ...................................................................18

*Arnold v. DirectTV, Inc.*,
   2012 WL 4480723 (E.D. Mo. Sept. 28, 2012) ................................8

*Adair v. Wisconsin Bell, Inc.*,
   2008 WL 4224360 (E.D. Wis. 2008) ..............................................5

*Avilez v. Pinkerton Government Servs.*,
   286 F.R.D. 450 (S.D. Cal. 2012) ..................................................12

*Brasfield v. Source Broadband Servs., LLC*,
   2010 WL 3222495 (W.D. Tenn. Aug. 16, 2010) ..............................8

*Bollinger v. Residential Capital, LLC*,
   761 F. Supp. 2d 1114 (W.D. Wash. 2011) .......................................4

*Boyd v. City of Oakland*,
   458 F. Supp. 2d 1015 (N.D. Cal. 2006).........................................17

*Burch v. Qwest Commc'ns Int'l.*,
   500 F. Supp. 2d 1181 (D. Minn. 2007) ...............................1, 2, 11

*Burk v. Contemporary Home Servs.*,
   2007 WL 2220279 (W.D. Wash. 2007) ...........................................5

*Busk v. Integrity Staffing Solutions, Inc.*,
   713 F.3d 525 (9th Cir. 2013) ........................................................15

*Cf. Adams v. Inter-Con Sec. Sys., Inc.*,
   242 F.R.D. 530 (N.D. Cal. 2007) 242 F.R.D. 530 (N.D. Cal. 2007)..............15

*Chao v. A-One Med. Servs., Inc.*,
   346 F.3d 908 (9th Cir. 2003) ........................................................16

*Falcon v. Starbucks Corp.*,
   580 F. Supp. 2d 528 (S.D. Tex. 2008).....................................5, 6, 13

*Jenson v. Eveleth Taconite Co.*,
   139 F.R.D. 657 (D. Minn. 1991) ...................................................12

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - ii
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Jones v. Xerox Commercial Solutions, LLC*,
No. 4:13-cv-650, 2013 WL 5945652 (S.D. Tex. Nov. 6, 2013).....................................15

*Luksza v. TJX Co., Inc.*,
No. 2:11-cv-01359-JCM-GWF, 2012 WL 3277049 (D. Nev. Aug. 8, 2012)..................4

*Monroe v. FTS USA, LLC*,
257 F.R.D. 634, 637 (W.D. Tenn. 2009)...........................................................................8

*Morden v. T-Mobile USA, Inc.*,
No. C05-2112-RSM, 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006)...........2, 4, 11, 13

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ...........................................................................................2, 6

*Parker v. Rowland Express, Inc.*,
492 F. Supp. 2d 1159 (D. Minn. 2007) ..............................................................................2

*Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*,
212 F.3d 976 (7th Cir. 2000) ........................................................................................6, 18

*Rainbow Group, Ltd. v. Johnson*,
990 S.W.2d 351 (Tex. Ct. App. 1999)..............................................................................12

*Sims v. Lakeside Sch.*,
C06-1412-RSM, 2008 WL 189674 (W.D. Wash. Jan. 17, 2008) .....................................17

*Smith v. T-Mobile USA, Inc.*,
No. CV 05-5274 ABC (SSx), 2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) ..................4

*Torres-Lopez v. May*,
111 F.3d 633 (9th Cir. 1997) ...........................................................................................15

*W. Coast Hotel Co. v. Parrish*,
300 U.S. 379 (1937) .........................................................................................................12

*Wilks v. The Pep Boys*,
No. 3:02-0837, 2006 WL 2821700 (M.D. Tenn. Sept. 26, 2006) ......................................5

*Williams v. Sykes Enters., Inc.*,
Civ. No. 13-0946 (JRT/JJG) (D. Minn. Oct. 3, 2013)................................1, 2, 4, 5, 6, 11

*Winfield v. Citibank, N.A.*,
843 F. Supp. 2d 397 (S.D.N.Y. 2012) ......................................................................1, 2, 6

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION - iii
CASE NO. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

## FEDERAL RULES, REGULATIONS & STATUTES

29 C.F.R. § 778.318...................................................................................................7, 8

29 C.F.R. § 778.318(a).................................................................................................8

29 C.F.R. § 791.2(a)...................................................................................................15

Fed. R. Evid. 602.......................................................................................................17

29 U.S.C. § 203(d).....................................................................................................15

29 U.S.C. § 255(a)................................................................................................14-15

29 U.S.C. § 256(b).....................................................................................................15

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - iv
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwfaw.com

# I.  INTRODUCTION

In their Opposition to Plaintiffs' Motion for Conditional Collective Action Certification, Defendants falsely portray the size of the class, misrepresent the amount of discovery taken to date, submit a raft of employee declarations obtained through coercion and misinformation, and make several misleading assertions about the facts, including the suggestion that Xerox Business Services, LLC ("Xerox") does not employ the named Plaintiffs or the potential opt-in plaintiffs.  Setting aside Defendants' hyperbole, exaggeration, and misrepresentation, the nationwide class of call center agents who have been subject to the practices challenged in this action is quintessentially appropriate for certification.  Thus, conditional certification should be granted, notice should be sent, and discovery should be allowed.

# II.  REPLY ARGUMENT AND AUTHORITY

## A.  Defendants Misstate the Standard for First-Stage FLSA Conditional Certification

At the first stage in a FLSA collective action, "the court determines whether the class should be conditionally certified for notification and discovery purposes."  *Williams v. Sykes Enters., Inc.*, Civ. No. 13-0946 (JRT/JJG), slip op. at 5 (D. Minn. Oct. 3, 2013) (quoting *Burch v. Qwest Commc'ns Int'l.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) and conditionally certifying FLSA class of 51,000 call center and at-home agents in forty-five states).[1] Conditional certification is appropriate if the plaintiff establishes a "colorable basis" that the proposed class members "are the victims of a single decision, policy, or plan."  *Id.* (quoting *Burch*, 500 F. Supp. 2d at 1186).  "In exercising its discretion at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (internal quotation omitted).

---

[1] The *Williams v. Sykes Enters., Inc.* order is included as Exhibit 1 to the Declaration of Marc Cote ("Cote Decl."). All other exhibits are also attached to the Declaration of Marc Cote, unless otherwise noted.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - 1
CASE NO. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Contrary to Defendants' suggestion, it is only at the second stage, "which occurs <u>after</u> <u>discovery is completed</u>," that "the court conducts an inquiry into . . . the extent and consequences of [any] disparate factual and employment settings of the individual plaintiffs . . . ." *Williams*, Civ. No. 13-0946 (JRT/JJG), slip op. at 5 (quoting *Burch*, 500 F. Supp. 2d at 1186) (emphasis added); *see also Morden v. T-Mobile USA, Inc.*, No. C05-2112-RSM, 2006 WL 2620320, at *2 (W.D. Wash. Sept. 12, 2006) (courts do not review "specific employment conditions and duties of individual plaintiffs" until second stage certification). Because extensive discovery has <u>not</u> yet taken place, Plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Winfield*, 843 F. Supp. 2d at 402 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). This is a "fairly lenient standard, and typically results in conditional certification . . . ." *Williams*, Civ. No. 13-0946 (JRT/JJG), slip op. at 6 (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)).

The reason the conditional certification standard is typically lenient at the first stage is that discovery is incomplete and the court lacks sufficient information on which to make a final factual determination as to whether the plaintiffs are similarly situated to the proposed class members. *See Williams*, Civ. No. 13-0946 (JRT/JJG), slip op. at 6 (quoting *Parker*, 492 F. Supp. 2d at 1164). Such is the case here, where <u>Defendants have refused to produce practically</u> <u>any discovery beyond the two call centers at which the named Plaintiffs worked</u>.[2]

---

[2] Defendants state that Plaintiffs deposed "[seven] 30(b)(6) designees" and "served 45 interrogatory subparts and 77 document requests." Dkt. 111 at 12:13-18. This is very misleading. Plaintiffs have taken only one half-day deposition in this case and have served only nine interrogatories and twenty requests for production, and Defendants have not provided full responses to those requests. Cote Decl. ¶ 22. Indeed, Defendants have refused to produce information regarding call center agents outside of Federal Way, Washington and Anderson, Indiana. Dkt. 98, Ex. 32 (asserting "FLSA plaintiffs are limited to discovery regarding the facilities at which they worked"); Cote Decl., Ex. 2 at 26-27. In the separate case of *Hill v. Xerox Business Services, LLC*, Ms. Hill noted a single Washington-based Rule 30(b)(6) deposition, though Defendants chose to designate multiple Washington witnesses for that deposition. *Id.* ¶ 23. Defendants' suggestion that Plaintiffs "arranged" the *Hill* case to "use discovery" in this case is absurd. First, *Hill* is a Rule 23 class action based on Washington law and limited to Washington state call centers. *Id.* ¶ 24. Second, *Hill* was filed six months before this case—and before dozens of call center workers had come forward to describe similar wage practices around the country. *Id.* ¶ 25.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    Plaintiffs initially propounded six interrogatories and two requests for production to

2    determine the scope of the class. Cote Decl., Ex. 3. Defendants responded with obfuscation,

3    form objections, and virtually no substantive information. *Id.* Defendants ultimately provided

4    information regarding the numbers of employees in their "facilities" in the United States, but

5    the company then refused to identify which facilities are call centers (where the employees at

6    issue work), claiming they do not know. *Id.*, Exs. 4-8. Plaintiffs then issued three additional

7    interrogatories and eighteen requests for production, but Defendants objected that to the extent

8    the requests sought information "beyond the Federal Way and Anderson facilities," such

9    requests were "premature" and "exceed[ed] the scope of discovery appropriate <u>at this stage</u> of

10   an FLSA collective action." *Id.*, Ex. 2 at 9, 27. Defendants also refused to produce a list of call

11   center employees beyond the call centers in Federal Way and Anderson; prohibited Plaintiffs'

12   counsel from using employee information regarding other Washington call centers that

13   Defendants produced in *Hill v. Xerox Business Services, LLC*; refused to produce complaints

14   made by employees outside of Federal Way and Anderson; failed to produce sample ABC

15   plans for call centers outside of Federal Way and Anderson until producing a handful of

16   redacted plans the day before Plaintiffs' motion for conditional certification was due; and never

17   identified the majority of Xerox officials and employees from whom they later filed

18   declarations with their opposition brief. *Id.*, Ex. 2 at 24-27, Exs. 4-7; Dkt. 98, Exs. 32, 34.

19       Though they have refused to allow Plaintiffs to engage in substantive discovery outside

20   of the Federal Way and Anderson call centers, Defendants nevertheless assert that an elevated

21   certification standard should apply in this case. Defendants cannot have it both ways. They

22   cannot refuse to engage in basic discovery and then demand an elevated standard of proof that

23   would apply only if Plaintiffs had been allowed to obtain that nationwide discovery. Adopting

24   such an approach would be fundamentally unfair and would reward the type of stonewalling

25   and gamesmanship that Defendants have displayed.[3] Indeed, denying conditional certification

26

---

[3] The fundamental unfairness of Xerox's proposed approach is evident when examining the declarations Xerox submitted in support of its opposition to conditional certification. Nearly all of the 113 declarations are from

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

and preventing Plaintiffs from obtaining discovery of Defendants' nationwide practices would repudiate the two-stage FLSA conditional certification process that is designed to facilitate a fair and efficient resolution of collective action claims.[4]

**B.** **Plaintiffs Have Demonstrated that They and the Proposed ABC Class Members Are Subject to Common Plans and Policies that Allegedly Violate the FLSA**

"For conditional certification at this notice stage, the Court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Morden*, 2006 WL 2620320, at *2 (internal quotation omitted); *see also Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) (same). In a similar FLSA call center case recently decided in the District of Minnesota, for example, the court granted the plaintiffs' motion for conditional certification and ordered that notice be sent to 51,000 agents in forty-five states, including at-home agents, based on the submission of affidavits alleging a common practice or policy. *Williams*, Civ. No. 13-0946 (JRT/JJG), slip op. at 2, 8-9.

Here, Plaintiffs have likewise satisfied their burden by substantially alleging—through declarations, pleadings, and documentary evidence—that the members of the ABC class are subject to common policies and plans that violate the FLSA. Indeed, Plaintiffs have presented testimony from twenty call center agents working at twelve locations in seven states, and all of these agents say the same things about Defendants' common unlawful policies and practices.

---

employees Xerox never identified. Cote Decl., ¶ 26. Sixty-four are from facilities from which Xerox provided no discovery (aside from some ABC plan materials produced the day before Plaintiffs' motion was due) beyond an address, client code, and identification number. *Id.* ¶ 27.

[4] The cases Defendants rely on in support of a heightened standard are distinguishable because they involved the type of discovery that Defendants have refused to engage in here. *See, e.g., Luksza v. TJX Co., Inc.*, No. 2:11-cv-01359-JCM-GWF, 2012 WL 3277049, at *1 (D. Nev. Aug. 8, 2012) (discussing parties' stipulation to conduct discovery after the motion to conditionally certify the class had been filed but before the court's decision); *Smith v. T-Mobile USA, Inc.*, No. CV 05-5274 ABC (SSx), 2007 WL 2385131, at *4 (C.D. Cal. Aug. 15, 2007) (recognizing that second stage certification was appropriate <u>only because</u> "discovery as to class certification [was] complete," plaintiffs had been provided information to send notice to 10% of the class, and plaintiffs had been allowed to conduct discovery of 10% of defendants' store managers).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION - 4
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

1    Dkts. 88-97, 99; Dkt. 98, Exs. 30, 31; *see also* reply declarations submitted herewith.[5]  In

2    addition, more than sixty Xerox employees from twelve call centers in several states have now

3    opted into this action—without even having received notice. Cote Decl. ¶ 28.  Thus, despite

4    Defendants refusal to engage in basic discovery, Plaintiffs have presented more evidence of

5    common claims than was shown in any of the cases Defendants cite in their opposition.  *See,*

6    *e.g., Burk v. Contemporary Home Servs.*, 2007 WL 2220279, at *4 (W.D. Wash. 2007)

7    ("Plaintiffs have produced no declarations or other evidence demonstrating that any other

8    employees seek to assert the same claims as plaintiffs do here."); *Adair v. Wisconsin Bell, Inc.*,

9    2008 WL 4224360, at *2 (E.D. Wis. 2008) (noting that only one person beyond the two named

10   plaintiffs had filed a written consent to join the suit and supporting declaration).

11           Contrary to Defendants' suggestion, it is unnecessary for Plaintiffs to prove a formal or

12   written policy that explicitly instructs employees to perform unpaid work.  *See Williams*,

13   Civ. No. 13-0946 (JRT/JJG), slip op. at 9 ("Identifying a specific policy in an employment

14   manual is not necessary . . . . The mere absence of a written policy that is violative of the FLSA

15   would nullify many meritorious claims.").  Indeed, the fact that Xerox may have written

16   policies to pay employees for all hours worked, policies that were created after recent lawsuits

17   were filed against the company, is irrelevant.  Employers cannot escape liability by

18   disseminating an "official written policy" that is legal and then proceed to wholly ignore that

19   policy in practice.  *See Wilks v. The Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *5 (M.D.

20   Tenn. Sept. 26, 2006) (holding plaintiffs proffered significant evidence that an illegal practice

21   existed despite employer's written policies guaranteeing overtime compensation); *Falcon v.*

22   *Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (allowing case to proceed where

23   ─────────────────────

24   [5] Plaintiffs originally presented declarations from eleven employees working at nine locations in six states. *See*
     Dkts. 88-97, 99.  Ms. Douglas and Ms. Richard have since been deposed, and they testified to the same failure to
     pay them for all hours worked.  Cote Decl., Ex. 9 at 18:20 - 19:2, 77:4 - 77:19, 81:16-23, 88:7 - 89:11, 130:1-20,
25   133:1-6, 133:19 - 134:10, 242:18 - 243:14, 278:5 - 279:13 (Richard Dep.); Ex. 10 at 105:10-21, 109:10-23, 116:5-
     17, 124:22 – 125:11, 158:7-15, 175:16-25, 327:25 – 328:8 (Douglas Dep.).  Plaintiffs are submitting nine
26   additional declarations in reply to Defendants' allegations, including declarations from agents Defendants
     improperly coerced to sign misleading statements.  *See, e.g.,* Graham Decl.; Fune Decl.; Davis Decl..

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - 5
CASE No. 2:12-CV-01798

1  plaintiffs established they were similarly situated "despite the fact that [defendant] had an

2  official 'time worked is time paid' policy"). Likewise, it is "absurd" for Defendants to assert

3  that employees cannot testify to unwritten policies that effectively require off-the-clock work.

4  *See Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 980 (7th Cir. 2000).[6]

5       At this stage the Court merely determines "whether it is appropriate to send notice to

6  potential opt-in plaintiffs 'who may be "similarly situated" to the named plaintiffs <u>with respect</u>

7  <u>to whether a FLSA violation has occurred</u>.'" *Winfield*, 843 F. Supp. 2d at 402 (quoting *Myers*,

8  624 F.3d at 554) (emphasis added). In other words, Plaintiffs "need not demonstrate they are

9  similarly situated in every respect, provided they are similarly situated with respect to the

10 FLSA violations they allege." *Id.* at 404 (rejecting defendant's arguments that plaintiffs' were

11 not similarly situated because of purported "inconsistencies regarding the plaintiffs' motives

12 for working overtime; how much overtime, if any, they were paid; and what job duties they

13 performed, among other purported discrepancies"); *see also Williams*, Civ. No. 13-0946

14 (JRT/JJG), slip op. at 6 ("The employment circumstances need not be identical."). Indeed,

15 differences in job duties and motivations for working off the clock are not relevant to the

16 "similarly situated" inquiry—<u>even at the second stage</u>. *See Falcon*, 580 F. Supp. 2d at 536-37

17 ("That [potential class members] did not perform exactly the same duties off-the-clock does not

18 undermine the conclusion that the putative class is similarly situated."). Here, Defendants' call

19 center agents are similarly situated with respect to the <u>material facts</u> regarding whether

20 Defendants violated the FLSA.

21

22

23

24  [6] In addition to the testimony of twenty ABC call center agents regarding Xerox's policies and practices resulting in off-the-clock work, thirty-nine ABC agents have submitted declarations regarding these same policies in the
25  related case of *Hill v. Xerox Business Services, LLC*, which is currently pending in this Court. *See* Case No. NO. 2:12-cv-00717-JCC, Dkt. 43-1 to 43-39. Several call center workers provided similar testimony in *Sump v.*
26  *Affiliated Computer Services, Inc.*, which Affiliated Computer Services, Inc. ("ACS"), Xerox's predecessor, ultimately settled. Supp. Johnson Decl., Exs. 3-6.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION - 6
CASE NO. 2:12-CV-01798

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**1.    The ABC Class Is Similarly Situated With Respect to Achievement Based Compensation**

Plaintiffs allege that they and all other call center agents paid under Defendants' general Achievement Based Compensation ("ABC") plan are the victims of a common policy or plan that systematically deprives them of wages for work performed.  Specifically, they allege the ABC plan violates the FLSA because it separates work time into discrete work activities, and pays employees for some work activities (principally inbound call time) but fails to pay employees for other work activities (such as time between phone calls and time spent performing follow-up work).  Defendants use the same ABC plan template for all call centers that have ABC agents.  Dkt. 98, Exs. 10-19.  Under the ABC plan, Defendants separately calculate the time worked in each discrete activity, and Defendants assign different forms of pay to some activities and no pay whatsoever to other activities.  Dkt. 87 at 4:24-6:2; Dkt. 98, Exs. 10-19, 21, 22.  Finally, Defendants use a centralized, nationwide payroll processing and employee tracking system, FEPS, to track the total time each employee is clocked in, the time each employee works in each discrete activity, and the resulting pay.  Dkt. 98, Exs. 3, 20, 35 at 57:22-58:7; Cote Decl., Ex. 11 at 15:9-15.  It is a simple mathematical calculation from Defendants' FEPS database to determine how much each call center agent worked in unpaid activities.  Dkt. 98, Exs. 10-19, 21, 22; Cote Decl., Ex. 12 at 1083.

Defendants contend the ABC plan is permissible under a federal regulation addressing payment for "productive" and "nonproductive" work.  *See* 29 C.F.R. § 778.318.  Defendants omit, however, any mention of the general rule set forth in that regulation—that employers are <u>not</u> allowed to pay employees only for "productive" work but must also pay for "nonproductive" time—and instead describe the exception to the general rule, which permits employees and employers to enter an "agreement" that pay earned at "piece rates" is intended to cover productive as well as nonproductive work.[7]  For purposes of this motion, the

---

[7] Under 29 CFR § 778.318(a), an agreement providing "for payment only for the hours spent in productive work" without payment for "work hours spent in waiting time . . . or similar nonproductive time" does not comply with the FLSA.  Paragraph (c) of the regulation states that "[t]he situation described in paragraph (a) of this section is to

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  regulation does not matter. Defendants' argument goes to the merits of Plaintiffs' claim rather

2  than to whether the members of the proposed class are similarly situated. In fact, Defendants'

3  argument confirms that class members are similarly situated.

4      All proposed class members are entitled to be paid for all time worked, whether

5  productive or unproductive. 29 C.F.R. § 778.318(a). To the extent Defendants claim an

6  exception to this rule based on an alleged "agreement," they are relying on the same written

7  provisions in their standard ABC plan.

8          All hours worked will be compensated by ABC Pay, unless your
           manager authorizes you to perform specific activities which have
9          been designated by management to be payable as Additional Pay.
           Any Additional pay will be paid on a per hour rate as described
10         below in the Additional Pay Rates section or which may be
           subsequently added to, deleted from or modified by management.

11

12  Dkt. 98, Exs. 10-14, 16-17, 19. Other courts that have been presented with arguments based on

13  29 C.F.R. § 778.318 have granted conditional certification. *See Arnold v. DirectTV, Inc.*, No.

14  4:10–CV–352–JAR, 2012 WL 4480723, at *5 (E.D. Mo. Sept. 28, 2012); *Brasfield v. Source*

15  *Broadband Servs., LLC*, No. 2:08–cv–02092–JPM–cgc, 2010 WL 3222495 (W.D. Tenn. Aug.

16  16, 2010); *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 637 (W.D. Tenn. 2009).

17      Defendants attempt to highlight alleged differences in the ABC plans from call center to

18  call center, but those asserted differences are not material. It does not matter, for example,

19  what "volume metrics" a particular call center uses in its ABC plan to measure and pay

20  employees for "productive" time. Frankly, it does not matter what the employees are even

21  doing during their so-called "productive" or "nonproductive" time. What matters is that they

22  are not being paid for some or all of the "nonproductive" time that they work.[8]

23  _____

    be distinguished from one in which such nonproductive hours are properly counted as working time but no special
24  hourly rate is assigned to such hours because it is understood by the parties that the other compensation received
    by the employee is intended to cover pay for such hours." 29 CFR § 778.318(c). To reach this understanding, the
25  parties must "agree that the pay the employees will earn at piece rates is intended to compensate them for all hours
    worked, the productive as well as the nonproductive hours." *Id.*

26  [8] Defendants accuse Plaintiffs' counsel of (among other things) playing a "parlor trick" by using Ms. Richard's
    time and pay detail from the FEPS database to show how the unpaid time can be calculated. Defendants contend
    that this is only possible because the "production unit" under Ms. Richard's ABC plan "happens to be a production

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION - 8
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    In sum, all members of the proposed ABC class are similarly situated with respect to

2    their ABC claim because they have worked "nonproductive" time that went unpaid.

3        **2.    The ABC Class Is Similarly Situated With Respect to Off-The-Clock Work**

4        Like their ABC plan claim, Plaintiffs' off-the-clock claims arise out of Defendants'

5    common policies and practices.  Dkt. 98, Exs. 5-9; Dkts. 88-97 , 99; reply declarations

6    submitted herewith.  Specifically, Plaintiffs allege Defendants suffer or permit off-the-clock

7    work through policies and practices that (1) require agents to be ready to receive phone calls at

8    the moment each shift starts, which results in agents performing pre-shift startup work off the

9    clock;[9] (2) pressure agents to maximize the time they spend taking inbound calls, which pushes

10   agents to perform other work off the clock; and (3) require agents to clock out before shutting

11   down their computer programs, which results in post-shift work off the clock.  Dkts. 88-97, 99;

12   Dkt. 98, Ex. 26 at 12172 and Ex. 28; Cote Decl., Ex. 12 at 1068 and 1070 (ABC PowerPoint

13   emphasizing policy to "eliminate non-productive tasks" during recorded work day), Ex. 9 at

14   240:18 – 241:5, 280:7-13; Ex. 10 at 327:25 – 328:8.  Contrary to Defendants' suggestion, the

15   attendance policy that requires agents to be on the clock and ready to take phone calls at the

16

17   minute," whereas many class members are paid by the call or other measure.  Dkt. 111 at 21 n.23.  The difference
     is immaterial.  As noted, Defendants measure practically everything, and FEPS tracks the amount of time that <u>all</u>
18   ABC employees are engaged in "productive" work, whether the pay for that work is measured by calls or by
     minutes or anything else.  Cote Decl., Ex. 11 at 15:9-15; Ex. 12 at 1070.  While Defendants have refused to
19   provide pay details for any proposed class members and both named Plaintiffs are paid under ABC plans that pay
     by the minute, agents in Defendants' Washington call centers <u>used to be</u> paid on a per-call basis, and FEPS
20   contained the same kind of time-tracking information for those agents as it does now for Plaintiffs.  *See* Supp.
     Johnson Decl., ¶¶ 2-4, Exs. 1-2.  There is no need to "divide by 60" the activities they performed because
21   Defendants' own records state exactly how much time the agents spent in "productive" (or "transactional")
     activities—for which they were paid at "ABC" pay rates.  *Id.*, Ex. 2 at 134:16.  It is a simple mathematical
22   calculation to subtract that and any other paid time from each agent's total work time to determine whether and
     how much work time goes unpaid.

23   [9] Defendants misleadingly assert that Plaintiff Tysheka Richard testified she could use the "System Down" AUX
     code to perform system startup work.  In dong so, Defendants omit several other portions of Ms. Richard's
24   deposition in which she testified that (1) Xerox did not allow agents to log into the phone and go into a status (or
     AUX code) other than "available" when agents started their shifts; (2) agents must have prior approval to go into
25   "System Down" at the beginning of a shift; (3) Xerox officials instructed Ms. Richard and other agents to prepare
     their workstations and open programs before clocking in; and (4) other agents who worked in Ms. Richard's area
26   did not go into "System Down" at the start of the day.  Cote Decl., Ex. 9 at 135:22-137:1; 136:18-137:1; 278:5-
     279:13 (Tysheka Richard deposition testimony).

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

moment their shifts start is a <u>common policy</u> applicable to all "non-exempt Customer Care production employees in Business Process Solutions (BPS)." Dkt. 98, Exs. 5, 6; Cote Decl., Ex. 13.

In their opening brief, Plaintiffs proposed certification of two classes: (1) an off-the-clock class that includes all inbound call center customer service agents, and (2) a smaller subclass that includes only those inbound call center customer service agents paid under the ABC plan. Based on information included with Defendants' opposition papers, Plaintiffs now request certification of just the smaller group—that is, call center agents paid under the ABC plan—for both the off-the-clock and ABC claims. Call center agents who are paid under the ABC plan share additional similarities that drive them to work off the clock. First, all agents paid under the ABC plan are similarly situated with regard to the lack of separate compensation for "nonproductive" startup time—<u>even if such work is performed on the clock</u>. Dkt. 87 at 4:24 – 6:2; Dkt. 98, Exs. 21-22; Cote Decl. Ex. 12 at 1083; Ex. 9 at 292:5-293:3 (testifying regarding supervisor statement that "we don't get paid for system down, so not to worry about" using it for pre-shift work because "it didn't matter either way"). Thus, employees who are paid under the ABC plan have no incentive to clock in before they are ready to take calls because they are not paid for that time regardless. *Id.* Second, all call center agents paid under the ABC plan need to have computer programs open and loaded to take customer phone calls. Dkts. 88-97, 99; Cote Decl., Ex. 9 at 130:1-20; *see also* Dkt. 112, Ex. A48 ¶ 6 (declaration Defendants submitted from Sara Stevenson admitting that she logs into several computer programs before clocking in); *see also* Dkt. 112, Exs. A13 ¶ 7, A17 ¶ 7, A26 ¶ 6, A39 ¶ 7; reply declarations submitted herewith. Third, all of the time and activities of call center agents paid under the ABC plan are recorded in the nationwide FEPS database and are monitored by the nationwide Workforce Management group, which tracks every minute agents spend at work and pressures agents to be on the phones taking calls. Dkt. 98, Exs. 2, 4, 35 at 57-58 and 126-

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

1    127; Cote Decl., Ex. 14 at 22, Ex. 11 at 206:15 – 208:12, and Ex. 15 at 24:13 – 26:17, 117:8 –

2    119:7, 120:13-21.

3           The facts that Defendants highlight, on the other hand, are not material to the "similarly

4    situated" inquiry at this stage.  First, the use of different telephones and timekeeping systems is

5    not a proper reason to deny conditional certification.  *See* Cote Decl., Ex. 1 (*Williams*, Civ. No.

6    13-0946 (JRT/JJG), slip op. at 7-8 (rejecting Defendants' arguments regarding "the minutiae of

7    the differences between timekeeping software")).  Second, the fact that employees have slightly

8    different titles and job duties or work at different locations does not bear on first stage

9    conditional certification.  *Morden*, 2006 WL 2620320, at *3-4 (rejecting defendant's argument,

10   supported by 99 declarations from current employees, that employees "performed different job

11   duties, in a variety of states, and under different management structures"); *see also Burch*, 500

12   F. Supp. 2d at 1188 (noting that analysis of "individual issues of job duties" is not proper until

13   "the second stage of certification analysis").  Finally, Defendants point to several other

14   immaterial differences, including ABC metrics, the names attached to otherwise

15   interchangeable AUX codes, the types of calls employees take or other tasks employees

16   perform, and the size of buildings, seating arrangements, and state wage laws about rest breaks.

17   None of these factors are relevant to (1) whether recorded work time is unpaid under the ABC

18   plan or (2) whether Defendants' policies and practices require or permit off-the-clock work.

19   **C.     Defendants' Declarations Do Not Support Denial of Conditional Certification**

20          Defendants have inundated Plaintiffs and the Court with almost 1,800 pages of

21   declarations and other documents.  The collection of declarations consists of (1) declarations

22   from biased management officials and high-level executives; (2) declarations from call center

23   agents who were coerced to sign statements that did not accurately reflect their call center

24   experience; and (3) recycled declarations from previous cases signed by individuals who are

25   excluded from the class based on settlements involving similar claims.  Notably, several

26   declarations are from agents of call centers about which Xerox refused to produce discovery,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - 11
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  meaning Plaintiffs have had no meaningful opportunity to test the evidence. *See supra* Section

2  3, footnote 3. And several of Xerox's declarants now <u>admit</u> that they had to perform work

3  without pay on a daily basis. Graham Decl.; Fune Decl.; Davis Decl.; *see also* Dkt. 112,

4  Ex. A48 at ¶6; *see also* Dkt. 112, Exs. A13 ¶ 7, A17 ¶ 7, A26 ¶ 6, A39 ¶ 7.

5      Xerox submitted 59 declarations from call center agents that were current employees at

6  the time of signing and 54 declarations from management officials and high-level executives.

7  Courts routinely discount such testimony on the ground that the statements are inherently

8  biased or the result of coercion. *See, e.g.*, *Avilez v. Pinkerton Government Servs.*, 286 F.R.D.

9  450, 458–59 (S.D. Cal. 2012) (noting that a current employee has every incentive to answer

10  "yes" when her employer's attorney asks if she likes her employer's current practice); *Morden*,

11  2006 WL 2620320, at *3 (discounting credibility of 99 current employee declarations

12  submitted by employer due to risk of bias and coercion); *Jenson v. Eveleth Taconite Co.*, 139

13  F.R.D. 657, 664 (D. Minn. 1991) (employees "have an interest in maintaining amicable

14  relationships at work"); *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 357 n.5 (Tex. Ct.

15  App. 1999) (employees signing declarations for employer likely "feared professional

16  consequences of not signing"). As the United States Supreme Court recognized long ago,

17  employees "are often induced by fear of discharge to conform to regulations which their

18  judgment, fairly exercised, would pronounce detrimental to their health or strength." *W. Coast*

19  *Hotel Co. v. Parrish*, 300 U.S. 379, 394 (1937).

20      The evidence here shows Xerox used its status as an employer to intimidate its low-

21  wage call center agents to sign false or misleading statements. While at work, agents were

22  pulled aside by supervisors one-by-one, taken to a conference room with a company lawyer,

23  and asked to sign documents. Graham Decl. ¶¶ 5-7; Fune Decl. ¶¶ 5-8; Davis Decl. ¶¶ 5-8. At

24  least some of these low-wage workers felt they had no real choice. Fune Decl. ¶¶ 6-7; Davis

25  Decl. ¶ 7. As Lacey agent Nonnie Davis explains, the coercive message was immediately

26  understood: "I signed the declaration as asked because I was worried that my job might be at

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - 12
CASE No. 2:12-CV-01798

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1     risk or that I would be retaliated against in some way if I failed to do so."  Davis Decl. ¶ 7.

2     Federal Way agent Ashley Fune similarly states: "I signed the declaration that was presented to

3     me on August 14, 2012 because I felt pressured to sign it.  I was worried that my employment

4     might be affected or that I might face retaliation.  It was my understanding that Xerox expected

5     me to sign the declaration."  Fune Decl. ¶ 7.  All Defendants' agents who were asked to sign

6     declarations had an obvious incentive to remain on good terms with the company.[10]

7        Despite the enormous amount of paper Xerox has submitted, Xerox's declarations

8     should be given little weight or discounted entirely.

9     **D.**      **Conditional Certification Cannot Be Denied on the Ground that Many Employees**

10           **at Multiple Call Centers Have Been Affected by Defendants' Unlawful Practices**

11        Defendants suggest that conditional collective action certification is inappropriate

12     merely because the unlawful policies and practices at issue have impacted thousands of

13     employees at dozens of call centers.  As one court noted in response to similar arguments, "[i]t

14     simply cannot be that an employer may establish policies that create strong incentives for

15     managers to encourage or allow employees to work off-the-clock, and avoid a FLSA collective

16     action because a large number of employees at a number of different stores are affected."

17     *Falcon*, 580 F. Supp. 2d at 539-40.  Indeed, "any large class of employees working for a

18     nationwide employer alleging FLSA overtime violations will encounter these difficulties, and

19     there is no indication that Congress intended section 216 to only allow small collective actions

20     involving unpaid overtime to proceed."  *Id.*

21

22     [10] Moreover, many of the declarations are recycled declarations from similar cases Xerox or ACS settled, and

23     some are from call centers that are not part of this case.  Indeed, only thirty-two of Xerox's declarations are from call center agents who were not subject to settlements in the *Sump* or *Bell* cases.  Cote Decl. ¶ 29.  Of those thirty-

24     two declarations, four are from employees who are not potential opt-ins.  Dkt. 112, Exs. A11, A14, A34, A35 (declarations from Redmond, Washington WDS facility where employees are not paid under ABC and where

25     FEPS is not used).  Moreover, many of the management declarations are from facilities that are not part of this case.  *See, e.g.*, Dkt. 112, Ex. B12 (recycled pre-class period *Sump* declaration from Auburn, Washington call

26     center that no longer exists); B20 (same); B19 (recycled pre-class period *Sump* declaration from Kent, Washington outbound call center that no longer exists); B28 (same); B39 (recycled pre-class period *Sump* declaration from Tumwater, Washington call center that no longer exists); B45 (same).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE ACTION
CERTIFICATION  - 13
CASE No. 2:12-CV-01798

1    Defendants continue to obfuscate the size and composition of the class, as they have

2    done throughout the discovery process.  Indeed, during discovery, Defendants refused to

3    identify their actual "call centers," asserting that the definition of "call center" is unclear.  Cote

4    Decl., Exs. 4-7.  Defendants also refused to identify the agents who work in their call centers

5    outside of Federal Way, Washington and Anderson, Indiana.  *Id.*, Ex. 2 at 26-28.  Now,

6    Defendants brazenly argue that Plaintiffs' motion does not adequately describe the very call

7    centers and agents that Defendants refused to identify.  Based on what Plaintiffs know at this

8    stage, however, the class is much more limited than Defendants suggest, and all class members

9    are easily identifiable in Xerox's own FEPS database.

10    Defendants' repeated assertion that they do not know who these employees are is belied

11    by marketing materials and the nationwide FEPS database.  Indeed, despite Defendants'

12    claimed ignorance about what a call center is, the Xerox/ACS website has a dedicated section

13    that describes Xerox/ACS's uniform call center operations.  *See* Cote Decl., Ex. 16.  This case

14    is limited to Defendants' United States call center agents paid under ABC who provide inbound

15    customer service to third-party clients.  Defendants track and maintain these employees'

16    identities and information, including timekeeping and pay information, in their FEPS payroll

17    system.[11]  Cote Decl., Ex. 11 at 15:9-15 (describing the data FEPS collects); Dkt. 98, Ex. 20

18    (same).

19    Moreover, Defendants' hyperbolic, sky-is-falling pronouncements of the scope of the

20    class—which they falsely suggest may exceed 166,000 members—must be viewed in light of

21    the facts.  Defendants' own documents reveal they likely have fewer than 23,000 current

22    employees in their call centers.  Cote Decl., Ex. 17 at XBSHILL1045 (stating that, as of August

23    2010, ACS/Xerox had "[m]ore than 23,000 call center professionals . . . <u>worldwide</u>" (emphasis

24    added), which suggests the number in the United States is even lower).  Defendants know and

25    have recognized that the 164 "facilities" they reference is a far broader group than number of

26
_____
[11] The case is limited to employees whose pay information is maintained in FEPS.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwfaw.com

"call centers" they operate.  Cote Decl., Ex. 4 at 4-5; Ex. 6.  Based on the limited information

Defendants provided in discovery, Plaintiffs have determined that Defendants employed less

than 47,000 ABC agents at fewer than 70 call centers between October 12, 2009 and

May 24, 2013. Cote Decl. ¶ 30, Ex. 18.[12]

Finally, Defendants' "unique defenses regarding groups of potential class members,"

with one exception,[13] apply to groups that Plaintiffs agree are excluded from the class: (1)

agents hired after September 27, 2012 whom Xerox barred from participating in a collective

action as a condition of employment; (2) agents in Washington and Oregon who worked for

Defendants only during the class periods covered by the settlements in *Sump v. Affiliated*

*Computer Services, Inc.* or *Bell v. Affiliated Computer Services, Inc.*;[14] and (3) agents who

pursue their claims in the *Jones v. Xerox Commercial Solutions, LLC* matter in Houston,

Texas.[15]  In sum, conditional certification of a class of ABC employees, subject to the

exclusions noted above, will result in a manageable class far smaller than Defendants suggest.

---

[12] Defendants provided employee counts from October 12, 2009 to May 24, 2013.  Cote Decl., Ex. 8.  Notably, the potential ABC class is much smaller than 47,000 because, generally speaking, only employees who have worked with Xerox within three years of filing a consent to join the action are eligible to assert claims.  *See* 29 U.S.C. § 255(a) (stating that statute of limitations for willful violation of FLSA is three years); 29 U.S.C. § 256(b) (stating that in a FLSA collective action, the statute of limitations for each individual claimant runs until he or she files a written consent to opt into the action).  Although equitable tolling should apply in this case, the total number of call center agents who will receive notice is well below 47,000 even if the statute of limitations is tolled.  *Cf. Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007) 242 F.R.D. 530, 543 (N.D. Cal. 2007) (equitably tolling statute of limitations as of 30 days after plaintiffs' request for class member contact information because "[t]he potential plaintiffs . . . have yet to receive notice of the action due to defendant's refusal to supply potential plaintiffs' contact information to the named plaintiffs").

[13] Agents who may be class members in the Washington state law class action, *Hill v. Xerox Business Services, LLC et al.*, are not excluded from this case merely because they also have state law wage claims.  *See Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528 (9th Cir. 2013) (recognizing that FLSA and state law wage and hour class actions "can peacefully coexist").

[14] These agents still have claims to the extent they worked for Xerox after the end date of the respective settlement class periods.

[15] The evening before the deadline for this reply, Defendants submitted the conditional certification order from the *Jones* court as "supplemental authority."  The *Jones* order is distinguishable because it is limited to narrow claims for unpaid wages (1) when supervisors allegedly logged employees out of the timekeeping system; and (2) when the timekeeping system experienced technical issues.  *See Jones v. Xerox Commercial Solutions, LLC*, No. 4:13-cv-650, 2013 WL 5945652, at *2 n.20, *3-5 (S.D. Tex. Nov. 6, 2013) (denying conditional certification where plaintiffs' motion was supported by only two declarations of other agents from one call center and where only seven other agents had consented to join the suit).

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**E.      All Potential Class Members Were "Employed" by Defendant Xerox Business Services LLC**

The FLSA broadly defines the "employer-employee relationship." *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997). Indeed, "employer" is defined to include "any person acting directly or indirectly in the interest of an employer . . . ." 29 U.S.C. § 203(d). An employee may have more than one employer under the FLSA. 29 C.F.R. § 791.2(a) ("A single individual may stand in the relation of an employee to two or more employers at the same time . . . ."). Entities are joint employers where "1) the employers are not 'completely disassociated' with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003).

Here, Xerox Business Services, LLC (and its predecessor Affiliated Computer Services, Inc. ("ACS")) set the common and "overarching" wage and hour policies—including compensation, "time reporting, attendance, [and] ABC pay" policies—for all of Defendants' call centers in the United States. *See* Dkt. 112, Ex. B51, ¶¶ 4-8 (Decl. of Nancy Dahlberg, Xerox Business Services, LLC Vice President of Human Resources)); *see also* Dkt. 98, Exs. 1, 5-8, 20-21, 26. There is no merit to Defendants' efforts to insulate themselves from liability by arguing that other shell companies employed Plaintiffs, certain declarants, and potential opt-in plaintiffs. Xerox and ACS instituted the unlawful policies at issue and are therefore directly involved in the employment of the Plaintiffs and proposed class members. *See id.* And Xerox controls the employment practices for the other entities that Defendants refer to as "non-defendant companies." *See id.*; *see also, e.g.,* Dkt. 112, Ex. B5, ¶ 5. Thus, Xerox (along with ACS) is a joint employer of Plaintiffs and all potential opt-ins. *Chao*, 346 F.3d at 918.

In addition, the named Plaintiffs, declarants, and opt-in plaintiffs all understand that they worked for one or more of the named Defendants in this case. Dkts. 88 – 97, 99; Cote Decl., Ex. 9 at 28:21-24, Ex. 10 at 35:24 – 36:1; Consent to Join Forms filed with Court (*see, e.g.,* Dkt. 46-54). Indeed, every one of them has signed a form consenting to join this lawsuit

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

that states, "I have performed customer service work as an employee for one or more of the . . . Defendants during the period between October 12, 2009 to the present." *See, e.g.,* Dkt. 84. Statements from Xerox's own website further show that Xerox employs all call center agents. Indeed, every job announcement on the website lists the employer as "Xerox Business Services, LLC." *See, e.g.,* Cote Decl., Ex. 19.[16]  Finally, workforce management and marketing materials tout the singularity of the organization.  Dkt. 98, Ex. 2; Cote Decl., Ex. 20. For these reasons, every potential opt-in is or was an employee of Xerox or ACS.

**F.      The Court Should Strike the Improper "Summary" of Alleged Facts In Attorney Todd Nunn's Declaration**

Statements in an attorney declaration that are not based on personal knowledge are inadmissible. *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1024-25 (N.D. Cal. 2006); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Paragraphs 6 to 27 of the declaration of Defendants' counsel, Todd Nunn, list alleged "facts of relevance in this case" and state where these alleged facts can be purportedly found in testimonial declarations of witnesses. Dkt. 112, ¶¶ 6-27.  Because Mr. Nunn has no personal knowledge of these alleged facts, paragraphs 6 to 27 of his declaration are inadmissible, and Defendants' references to such paragraphs in their opposition brief should not be considered.

Moreover, Mr. Nunn cannot escape the personal knowledge requirement by calling paragraphs 6 to 27 a "summary" under FRE 1006.  Indeed, "[t]he burden is on the proffering party to show that [a FRE 1006] summary is admissible," and "FRE 1006 should not be used as a back-door vehicle for introduction of evidence which is otherwise inadmissible." *Sims v. Lakeside Sch.*, C06-1412-RSM, 2008 WL 189674, at *7 (W.D. Wash. Jan. 17, 2008) (internal citations omitted) (striking summary of declaration testimony).  FRE 1006 authorizes only the

---

[16] For example, Xerox job announcements for the Sandy, Utah call center—where the SBU manager claims she is employed by Xerox Commercial Solutions, LLC—list the employer as "Xerox Business Services, LLC." *Compare* Cote Decl., Ex. 19 *with* Dkt. 112, Ex. B5 ¶ 2 and Ex. B17 ¶ 2.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1 admission of a summary of writings, recordings, or photographs. "Summary of purely

2 testimonial evidence is, strictly speaking, not within the purview of FRE 1006." *Id.* Mr. Nunn

3 has not met his burden of showing how his "summary" of other individuals' testimony is

4 admissible. The fact that the testimonial declarations are "voluminous" and "massive" is not

5 sufficient to support the admissibility of the summary. *Id.* (rejecting argument that testimonial

6 summary should be admissible under FRE 1006 because the declaration testimony "cannot be

7 conveniently examined in court"). Furthermore, the statements included in the summary

8 merely reiterate the arguments Defendants makes in their brief. Defendants' attempt to include

9 several pages of alleged facts in an attorney declaration—under the cloak of FRE 1006—is

10 improper, particularly where the attorney has no personal knowledge of the alleged facts.

11 Thus, Paragraphs 6 to 27 of Mr. Nunn's declaration and all references thereto in Defendants'

12 brief are inadmissible and should be stricken.

13 **G.      Defendants' Motion to Strike Should Be Denied**

14          Plaintiffs already agreed to a stipulation, insisted upon by Defendants, that the

15 individual agent declarants spoke only of the policies and practices of the facilities in which

16 they worked. This is precisely the scope of their own "personal knowledge," and is therefore

17 entirely proper. *See Pryor*, 212 F.3d at 980. Their estimates of the average times they spent in

18 off-the-clock work activities is plainly based on their personal knowledge. It is not only

19 permissible but is the well-accepted means of calculating damages where the employer has

20 failed to record the hours worked. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687

21 (1946) (holding that "an employee has carried out his burden if he proves that he has in fact

22 performed work for which he was improperly compensated and if he produces sufficient

23 evidence to show the amount and extent of that work as a matter of just and reasonable

24 inference."). Thus, Defendants' Motion to Strike should be denied.

25

26

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

## H. Equitable Tolling of the Statute of Limitations for Potential Opt-In Plaintiffs is Appropriate

The principle of equitable tolling applies to toll the statute of limitations for potential opt-in plaintiffs in a FLSA collective action where "diligent plaintiffs are unable to join an action through no fault of their own." *See Adams*, 242 F.R.D. at 542 (internal citation omitted). In *Adams*, the defendant refused to supply potential plaintiffs' contact information to the named plaintiffs before conditional certification, which postponed notice to potential plaintiffs of their right to consent to join the case. *Id.* at 543. To "counter[] the advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment," the court equitably tolled the statute of limitations as of thirty days after Plaintiffs' request for contact information for potential plaintiffs. *Id.* Here, Plaintiffs requested identifying information, including contact information, for potential opt-in plaintiffs in their second set of discovery requests. Cote Decl., Ex. 2 at 26-28. On July 15, 2013, Defendants objected and refused to provide identifying information for potential opt-in plaintiffs. *Id.* Defendants' refusal to provide information about potential opt-in plaintiffs has resulted in a delay in notifying potential opt-in plaintiffs about their rights in this case. Thus, Plaintiffs ask that this Court enter an order tolling the statute of limitations for potential opt-in plaintiffs from July 15, 2013—the date Defendants objected and refused to provide identifying information for potential opt-in plaintiffs—until the date Defendants supply the requisite information. *See Adams*, 242 F.R.D. at 543.

## III. CONCLUSION

Plaintiffs respectfully request that this Court grant their Motion for Conditional Collective Action Certification, issue notice on all claims to the proposed class of call center customer service agents paid under the ABC plan, allow Plaintiffs to conduct discovery into Defendants' unlawful pay practices, and enter an order tolling the statute of limitations for opt-in plaintiffs from July 15, 2013 until the date Defendants supply Plaintiffs with full contact information for opt-in plaintiffs.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    RESPECTFULLY SUBMITTED AND DATED this 20th day of November, 2013.

2                                   TERRELL MARSHALL DAUDT & WILLIE PLLC

3                                   By: /s/ Toby J. Marshall, WSBA #32726
4                                       Toby J. Marshall, WSBA #32726
                                        Email:  tmarshall@tmdwlaw.com
5                                       Marc C. Cote, WSBA #39824
                                        Email:  mcote@tmdwlaw.com
6                                       936 North 34th Street, Suite 300
7                                       Seattle, Washington  98103-8869
                                        Telephone: (206) 816-6603
8                                       Facsimile:  (206) 350-3528

9                                       Daniel F. Johnson, WSBA #27848
                                        Email:  djohnson@bjtlegal.com
10                                      BRESKIN JOHNSON & TOWNSEND, PLLC
11                                      1111 Third Avenue, Suite 2230
                                        Seattle, Washington  98101
12                                      Telephone:  (206) 652-8660
                                        Facsimile:  (206) 652-8290
13
                                        Jon W. MacLeod, WSBA #8491
14                                      Email:  jwm@jwmacleodlaw.com
                                        MACLEOD LLC
15                                      1700 Seventh Avenue, Suite 2100
16                                      Seattle, Washington  98101
                                        Telephone: (206) 357-8470
17                                      Facsimile: (206) 357-8401

18                                      *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

<u>CERTIFICATE OF SERVICE</u>

I, Toby J. Marshall, hereby certify that on November 20, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Patrick M. Madden, WSBA #21356
Email: patrick.madden@klgates.com
Todd L. Nunn, WSBA #23267
Email: todd.nunn@klgates.com
Ryan D. Redekopp, WSBA #36853
Email: ryan.redekopp@klgates.com
Daniel P. Hurley, WSBA#32842
Email: dan.hurley@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
Telephone: (206) 623-7580
Facsimile: (206) 623-7022

*Attorneys for Defendants*

DATED this 20th day of November, 2013.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Toby J. Marshall, WSBA #32726
  Toby J. Marshall, WSBA #32726
  Email: tmarshall@tmdwlaw.com
  Marc C. Cote, WSBA #39824
  Email: mcote@tmdwlaw.com
  936 North 34th Street, Suite 300
  Seattle, Washington 98103-8869
  Telephone: (206) 816-6603
  Facsimile: (206) 350-3528

*Attorneys for Plaintiffs*

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com