THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTY DOUGLAS and TYSHEKA RICHARD,<br><br>Plaintiffs,<br><br>v.<br><br>XEROX BUSINESS SERVICES LLC, et al.,<br><br>Defendants. | CASE NO. C12-1798-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiffs' motion for conditional collective action certification (Dkt. No. 87), Defendant's motion to strike (Dkt. No. 148), Plaintiffs' motion to strike (Dkt. No. 135), and Defendants' motion to file surreply (Dkt. No. 160). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART Plaintiff's motion for conditional certification (Dkt. No. 87); DENIES Defendant's motion to strike (Dkt. No. 148), DENIES Plaintiffs' motion to strike (Dkt. No. 135), and DENIES Defendant's motion to file surreply (Dkt. No. 160). The Court concludes that a subsequent round of briefing is necessary to address Plaintiff's proposed class, as described herein.

I.  BACKGROUND

Defendants operate call centers, or "strategic business units," throughout the country.

(Dkt. No. 87 at 4; Dkt. No. 111 at 7.) At these call centers, agents respond to calls for third-party clients such as phone companies, airlines, and hotels. (Dkt. No. 98, Ex. 1 at 8.) Plaintiff Richard is employed at a call center in Federal Way, Washington. (Dkt. No. 1 ¶ 3.1.) Plaintiff Douglas works at a call center in Anderson, Indiana. (*Id.* ¶ 3.2.)

Plaintiffs seek to conditionally certify classes concerning two sets of claims. One relates to the compensation plan used in many call centers, known as the Activity Based Compensation ("ABC") plan. (Dkt. No. 87 at 3; Dkt. No. 111 at 12.) The other relates to Defendants' alleged policy of requiring off-the-clock work. (Dkt. No. 87 at 3.)

Under the ABC plan, agents are paid for certain activities or transactions. (Dkt. No. 98 Exs. 10–19; Dkt. No. 111 at 22.) These transactions are called "units of production" or "production units." (Dkt. No. 111 at 12, 24.) Different call centers may use different metrics— such as calls, bookings, or "production minutes"—as production units. When agents are performing activities deemed non-productive, they record the time spent on those activities but do not receive transactional pay for that time.[1] (Dkt. No. 87 at 5–6; Dkt. No. 111 at 22 (not arguing that "unproductive time" is paid at a per-transaction rate).) Instead, if necessary, they receive "subsidy pay" to ensure that compensation remains above a certain hourly floor. (Dkt. No. 87 at 6; Dkt. No. 111 at 12.) It is unclear on the record before this Court whether and how the metrics used as part of the ABC pay calculations may affect the existence or amount of time that is not compensated on a per-transaction basis.

Plaintiffs also allege that Defendants require off-the-clock work. There is no dispute that no written company-wide policy requires off-the-clock work. (Dkt. No. 111 at 18; Dkt. No. 135 at 10.) However, as discussed in greater detail below, Plaintiffs allege that several company-wide policies implicitly require or pressure agents to perform work before or after clocking out or to perform work without recording it.

---

[1] Agents are also paid hourly rates for certain non-transaction activities, but the hourly rate for those activities is not an issue here.

## II. DISCUSSION

### A. Standard for Conditional Certification

Plaintiffs seek to conditionally certify two groups of claims under the Fair Labor Standards Act ("FLSA"), 209 U.S.C. §§ 201 *et seq*. The FLSA provides certain minimum protections for workers and allows employees to bring suit to recover minimum wages or overtime compensation. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739–40 (1981); 29 U.S.C. § 216(b). Employees bringing such an action may do so on behalf of other similarly situated employees. 29 U.S.C. § 216(b). Unlike Rule 23 class actions, FLSA collective actions are "opt-in," meaning that employees joining the action must file a written consent with the court. *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011). In the Ninth Circuit, the analysis of whether to allow an FLSA collective action is a two-tiered process. *Id.* First the Court determines whether potential class members are similarly situated such that they should receive notice of the collective action and the ability to opt-in by a certain date. *See id*. At the conclusion of discovery, the defendant usually moves to decertify and the court then more rigorously analyzes whether the employees are similarly situated; if they are not, the court decertifies the class. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007).

Courts usually apply a lenient standard in determining whether to conditionally certify a class because there has generally been minimal discovery at this initial stage. *See In re Wells Fargo*, 527 F. Supp. at 1071 (N.D. Cal. 2007) ("The usual result is conditional class certification."). Where significant discovery has been undertaken, however, courts may apply a higher standard. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("[C]ourts sometimes bypass the first stage when discovery has been completed."); *Lockhart v. Cnty. of Los Angeles*, No. 07-1680-ABC, 2008 WL 2757080 at *4 (C.D. Cal. July 14, 2008) (unpublished) (citing cases demonstrating that courts apply a heightened standard "[w]here substantial discovery has been completed").

The parties dispute which standard should govern. Plaintiffs argue that a lenient standard should apply because there has been little discovery beyond the Federal Way and Anderson sites, where the named plaintiffs worked. (Dkt. No. 87 at 13.) Defendants argue that there has been "extensive discovery" such that a heightened standard should apply. (Dkt. No. 111 at 3.) The Court recognizes that there has been some discovery and that the parties have submitted large quantities of paper with their motions. Sheer volume, however, is not the relevant metric for assessing the extent of discovery. At this stage there has been limited discovery about the nature of ABC plans outside of Anderson and Federal Way, a characterization that Defendants do not dispute. (Dkt. No. 87 at 13; Dkt. No. 111 at 14.) The Court therefore applies the more-lenient standard because this case is more analogous to those cases in which courts have declined to apply a rigorous standard despite some discovery having already occurred. *See, e.g.*, *Leuthold*, 224 F.R.D. at 467 (applying more-lenient standard despite "extensive discovery" because the court lacked a "complete factual record" and the discovery phase was "still in something of a state of flux" despite being near completion).

**B.     Surreply/Request to Strike**

In their surreply, Defendants note that Plaintiffs' reply brief dramatically narrowed the scope of the classes and that they wasted significant space addressing Plaintiffs' overly broad class definitions. (Dkt. No. 148.) The Court agrees that the narrowed class definitions resulted in wasted discussion. Moreover, Plaintiffs' shifts have left the Court unsure of the precise contours of Plaintiffs' proposed classes. As described below, the Court concludes that further briefing is necessary to define the proposed ABC class and evaluate whether members of that class are similarly situated. Although Plaintiffs' proposed OTC class also shrank, the Court concludes that there is no need for further briefing and denies conditional certification for this class. To the extent that Defendants are requesting additional briefing, the request is therefore granted; to the extent that Defendants seek to file a surreply, the motion is DENIED.

**C.     The ABC Class**

Plaintiffs seek conditional certification of all employees who have worked for defendants in the past three years whose primary duty consisted of receiving inbound telephone calls for third-party clients and who were paid in whole or in part under the ABC plan. (Dkt. No. 87 Ex. 1 at 2.)

To certify an FLSA class, Plaintiff must merely show that potential plaintiffs "were victims of a common policy or plan that violated the law." *See Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004) (internal quotation marks omitted) (citing cases). Conditional certification is not contingent on the ultimate success of Plaintiffs' FLSA claims. *Fisher v. Michigan Bell Tel. Co.*, 665 F.Supp.2d 819 (E.D. Mich. 2009) (citing cases); *Luksza v. TJX Co., Inc.*, No. 11-1359-JCM, 2012 WL 3277049 at *9 (D. Nev. Aug. 8, 2012) (even where the court applied a heightened standard, it was not the court's role to decide the case on the merits). "At this stage the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) (citing cases).

Defendants make two primary arguments about why employees paid under the ABC plan are not similarly situated. First, they argue that different call centers use different units of production, and that "there is no evidence that [a particular] metric is widespread." (Dkt. No. 111 at 24.) But where there has been limited discovery beyond a small number of call centers, details about how the various ABC plans operate and the potential differences between ABC plans are not fatal to conditional certification. Under the lenient standard, Plaintiffs have shown the existence of a common policy.

Second, Defendants suggest that a range of defenses may apply. (Dkt. No. 111 at 23–25.) One defense is that agents contractually agreed to the compensation system so the plan complies with the law under 29 C.F.R. § 778.318(c), which allows employees to agree that pay received for "productive" work also covers "non-productive" work. Plaintiffs themselves recognize some relevant defenses in suggesting several qualifiers for the ABC class in their reply brief. (Dkt. No.

135 at 20.) Issues related to tolling, relevant federal regulations, and potential ambiguities in the class definition were introduced late in the briefing, and it is unclear to the Court whether they should affect the class definition. Additional briefing is therefore necessary. Plaintiffs are directed to file a brief not to exceed 12 pages specifying the precise ABC class that they seek to certify by July 25, 2014. Defendants shall file a response not to exceed 12 pages by August 11, 2014. Plaintiffs' response should not exceed 6 pages and should be filed by August 15, 2014. These briefs should incorporate the Court's conclusions here—including that the more-lenient standard applies, and the ABC policy is a common policy—and also address any potential ambiguities in the proposed class, any issues related to tolling, and whether 29 C.F.R. § 778.318 affects whether the employees are similarly situated.

### D. The OTC Class

Plaintiffs initially sought to certify a class of all employees whose "primary duty consisted of receiving inbound telephone calls for third-party clients." (Dkt. No. 87 at 3, 17.) In the reply brief, Plaintiffs requested certification only of a smaller group of call center agents paid under the ABC plan. (Dkt. No. 135 at 15.) Plaintiffs claim that this change was "[b]ased on information included with Defendants' opposition papers," although they do not explain what information this was. (*Id*.) The Court found compelling Defendants' discussion of the lack of a company-wide policy (Dkt. No. 111 at 18–22), and Plaintiffs implicitly validate these concerns by substantially narrowing its proposed class definition in its reply brief.

Importantly, the Court cannot see how Plaintiffs' narrowed class will avoid the same problems that would have plagued the broader class. The proposed class spans different employers, different clients, different computer systems, different supervisors, and different available codes. Plaintiffs argue that there is a common policy of "requir[ing] agents to be on the clock and ready to take phone calls at the moment their shifts start." (Dkt. No. 135 at 15.) But this common policy does not demonstrate a common policy of agents being forbidden from clocking in before their shift. *See Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 440 (S.D. Ind. 2012)

(handbook defined a tardy time but did not address whether an early log-in was acceptable). Neither do declarations attesting that supervisors instructed agents to arrive early demonstrate that agents were necessarily required to perform work off the clock. (Dkt. No. 99, Exs. A, B, C, D, F, I (supervisors merely instructed agents to arrive early).) Some supervisors gave such instructions. (Dkt. No. 146, Ex. 10 (Plaintiff Douglas testified that her supervisor told her to boot up her computer before clocking in.); *see also* Dkt. No. 99, Ex. G (supervisor was aware that agent worked on unresolved technical issues at home and encouraged the practice).) Most plaintiffs, however, refer only vaguely to a "policy and practice" without giving any source—such as a supervisor's instruction—for their belief about the policy's existence. There is no evidence of a widespread—or even modestly spread—practice of supervisors instructing agents to work off the clock. *Cf. Fisher v. Michigan Bell Tel. Co.*, 665 F.Supp.2d 819 (E.D. Mich. 2009) (declarants averred that supervisors were aware of illegal practices). Even Plaintiff Richards testified that her supervisor assured her she would be paid for time spent logging in to computer programs, and there is no suggestion that Plaintiff sought more information about how to ensure such payment. (Dkt. No. 146, Ex. 9 at 89.)

Even assuming that the common policy of tracking time led all agents to feel some degree of pressure to be on the phone (Dkt. No. 135 at 15 (system tracking every minute "pressures agents to be on the phones taking calls"), Plaintiffs have failed to make a "modest factual showing" that this pressure manifested itself in a common practice that permeated all call centers implementing ABC plans. *Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 402 (S.D.N.Y. 2012)). *See also Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (certification not appropriate when putative class members had factual differences and the defendant had acquired many smaller companies that were committing wage and hour violations, suggesting that no policy united the violations). Although the Court agrees with Plaintiffs that the existence of a written policy purporting to comply with the law is not itself evidence of legality (Dkt. No. 135 at 10), neither does this Court believe that Plaintiffs have brought forth evidence that there is a

nationwide "single decision, policy, or plan" requiring employees to perform off-the-clock work, nor does this Court see how linking the OTC class to the definition of the ABC class solves the problems identified by Defendants. In contrast to this Court's request for further briefing regarding the ABC class, the Court concludes that further briefing is unnecessary, particularly in light of the significant extra space given to Plaintiffs in reply. The Court therefore DENIES conditional certification of an OTC class.

### E. Motions to Strike and Motion to File Substantive Surreply

The Court DENIES Plaintiffs' motion to strike because the summary is not argumentative, unlike the example that Plaintiffs cite. (Dkt. No. 135 at 22.) As described above, the Court has requested additional briefing. This largely renders moot Defendants' motion to file substantive surreply. To the extent that it does not, the motion is DENIED. (Dkt. No. 160.) The Court also DENIES Defendants' motion to strike. (Dkt. No. 148.)

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for certification is GRANTED IN PART (Dkt. No. 87), and Defendant's motion to file surreply is DENIED (Dkt. No. 160). The Court requests additional briefing directed specifically at the proposed ABC class. Plaintiffs shall file a brief not to exceed 12 pages specifying the nature of the ABC class they seek to certify by July 25, 2014. Defendants shall file a response not to exceed 12 pages by August 11, 2014. Plaintiffs' response should not exceed 6 pages and should be filed by August 15, 2014. The briefs should comply with the Court's directions described in this Order.

//
//
//
//

1    DATED this 10th day of July 2014.

                          John C. Coughenour
                          UNITED STATES DISTRICT JUDGE