THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTY DOUGLAS and TYSHEKA
RICHARD, individually and on behalf of
others similarly situated,

Plaintiffs,

v.

XEROX BUSINESS SERVICES, LLC, a
Delaware limited liability company;
LIVEBRIDGE, INC., an Oregon
corporation; AFFILIATED COMPUTER
SERVICES, LLC, a Delaware limited
liability company, and AFFILIATED
COMPUTER SERVICES, INC., a
Delaware corporation,

Defendants.

CASE NO. C12-1798-JCC

ORDER GRANTING PARTIAL
SUMMARY JUDGMENT FOR
DEFENDANTS

This matter comes before the Court on Defendants' Motion for Partial Summary

Judgment (Dkt. No. 271) and accompanying declarations and exhibits (Dkt. Nos. 272–274),

Plaintiffs' Opposition (Dkt. No. 275) and accompanying declarations and exhibits (Dkt. Nos. 277

and 278), Defendants' Reply (Dkt. No. 279) and accompanying declaration (Dkt. No. 280),

Plaintiffs' Cross-Motion for Partial Summary Judgment (Dkt. No. 276) and accompanying

exhibits (Dkt. Nos. 277 and 278), Defendants' Response to Plaintiff's Motion (Dkt. No. 286) and

declaration (Dkt. No. 287), and Plaintiffs' Reply (Dkt. No. 288) and supplemental declaration

(Dkt. No. 289). The Court held oral argument on November 24, 2015.

1    Having thoroughly considered the parties' briefing, the arguments presented to the Court

2   at oral argument, and the relevant record, the Court adopts Plaintiffs' view of the FLSA's

3   minimum wages provision, but determines that Defendants' ABC payment plan complies with

4   that interpretation. Accordingly, partial summary judgment is GRANTED for Defendants for the

5   reasons explained herein.

6   **I.    BACKGROUND**

7    Plaintiffs, Kristy Douglas and Tysheka Richards, bring the above-captioned matter on

8   behalf of a conditionally-certified class of similarly-situated employees of Defendants. (Dkt. No.

9   1; Dkt. Nos. 177 and 187.) Plaintiffs allege that Defendants have violated the minimum wage

10  and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by

11  utilizing a payment plan known as the Activity Based Compensation ("ABC") plan.

12   Defendants operate call centers, also known as "strategic business units," throughout the

13  country. (Dkt. No. 87 at 4; Dkt. No. 111 at 7.) At these call centers, agents respond to calls for

14  third-party clients such as phone companies, airlines, and hotels. (Dkt. No. 98, Ex. 1 at 8.)

15  Plaintiff Richards is employed at a call center in Federal Way, Washington. (Dkt. No. 1 ¶ 3.1.)

16  Plaintiff Douglas works at a call center in Anderson, Indiana. (*Id.* ¶ 3.2.) Both were paid under

17  the ABC plan. (Dkt. No. 1 at 4, 6.)

18   Under the ABC plan, agents are paid for certain activities or transactions. (Dkt. No. 98

19  Exs. 10–19; Dkt. No. 111 at 22.) These transactions are called "units of production" or

20  "production units." (Dkt. No. 111 at 12, 24.) Different call centers may use different metrics—

21  such as calls, bookings, or "production minutes"—as production units. When agents are

22  performing activities deemed non-productive, they record the time spent on those activities but

23  do not receive transactional pay for that time. (Dkt. No. 87 at 5–6; Dkt. No. 111 at 22 (not

24  arguing that "unproductive time" is paid at a per-transaction rate).) Instead, if necessary, they

25  receive "subsidy pay" to ensure that compensation remains above a certain hourly floor. (Dkt.

26  No. 87 at 6; Dkt. No. 111 at 12.)

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT FOR DEFENDANTS
PAGE - 2

1    Plaintiffs allege that Defendants' use of the ABC plan violated the minimum wage and

2    overtime provisions of the FLSA because it fails to compensate employees for all hours worked

3    and, by extension, fails to appropriately calculate the overtime employees are owed. (Dkt. No. 1

4    at 7–8.)

5    On November 21, 2014, the Court conditionally certified the Plaintiff class of "all current

6    and former employees of Defendants who worked at a call center in the United States at any time

7    since April 13, 2011, received inbound calls for third-party clients, and were paid in whole or in

8    part under the ABC plan," subject to certain exclusions. (Dkt. No. 187 at 10.) A total of 4,103

9    plaintiffs consented to join this suit.[1] (Dkt. No. 269.) The parties now file cross-motions for

10   partial summary judgment in their favor with respect to whether an FLSA violation occurred.

11   **II.    DISCUSSION**

12   **A.    Standard of Review**

13   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

14   summary judgment if the movant shows that there is no genuine dispute as to any material fact

15   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such

16   a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in

17   the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242,

18   255 (1986). Once a motion for summary judgment is properly made and supported, the opposing

19   party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"

20   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

21   Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute

22   about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

23   verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment

24   is appropriate against a party who "fails to make a showing sufficient to establish the existence

25

26   [1] 736 of these plaintiffs were removed from the suit as counsel for both sides stipulated that they were ineligible to join. (Dkt. Nos. 269 and 270.)

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT FOR DEFENDANTS
PAGE - 3

1  of an element essential to that party's case, and on which that party will bear the burden of proof

2  at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

3  **B.      Minimum Wage Under the Fair Labor Standards Act**

4          The FLSA was enacted "to raise substandard wages and to give additional compensation

5  for overtime work as to those employees within its ambit, thereby helping to protect this nation

6  'from the evils and dangers resulting from wages too low to buy the bare necessities of life and

7  from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945)

8  (quoting Sen. Rep. No. 884 (75th Cong., 1st Sess.) at 4). The statute itself states as its purpose to

9  guarantee "the maintenance of the minimum standard of living necessary for health, efficiency,

10  and general well-being of workers." 29 U.S.C. § 202. One of its "principal purposes . . . is to

11  ensure that employees are provided appropriate compensation for all hours worked." *Ballaris v.*

12  *Wacker Siltronic Corp.*, 370 F.3d 901, 913 (9th Cir. 2004).

13          As a remedial statute, in construing the FLSA, courts "must be mindful of the directive

14  that it is to be liberally construed to apply to the furthest reaches consistent with Congressional

15  direction." *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993) (citing *Mitchell v. Lublin,*

16  *McGaughy & Assoc.*, 358 U.S. 207, 211 (1959). "The FLSA's minimum wage and overtime

17  provisions are central among the protections the Act affords to workers." *Adair v. City of*

18  *Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999).

19          § 206 of the FLSA provides:

20          "Every employer shall pay to each of his employees who in any workweek is
21          engaged in commerce or in the production of goods for commerce, or is employed
            in an enterprise engaged in commerce or in the production of goods for
22          commerce, wages at . . . $7.25 an hour . . ."

23  29 U.S.C. § 206.

24          The Ninth Circuit has held that the statutory language referencing the "workweek"

25  triggers the applicability of the FLSA, but, as discussed in more detail below, not necessarily that

26  the "workweek" is the measurement for FLSA compliance. *Biggs*, 1 F.3d at 1539 ("The [FLSA

1  minimum wage] obligation kicks in once an employee has done covered work in any

2  workweek.").

3  **1.      The *Klinghoffer* Rule and Critiques**

4        The parties offer competing interpretations of how to measure compliance with the

5  FLSA's minimum wage requirement. Their disagreement parallels conflicting interpretations of

6  the FLSA provided by courts across the country.

7        Defendants argue that, so long as the total pay received in a week, divided by the total

8  number of hours worked that week—productive or unproductive—amounts to an hourly rate

9  higher than the federal minimum wage, no violation of the FLSA has occurred. (Dkt. No. 271 at

10 12.) This "workweek" measurement stems from the *Klinghoffer* rule laid out by the Second

11 Circuit in 1960. *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960).

12 Many courts have cited to *Klinghoffer*, but, Plaintiffs argue, without meaningful analysis as to

13 whether its rule actually effectuated the statutory language and legislative intent of the FLSA.

14 *See Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17, 22 (D. Mass. 2011) (compiling

15 cases).

16       Plaintiffs urge this Court to diverge from *Klinghoffer* in a manner similar to District

17 Judge Gertner in *Norceide v. Cambridge Health Alliance*. (Dkt. No. 275 at 19–21); 814 F. Supp.

18 2d 17 (D. Mass. 2011). In *Norceide*, the District of Massachusetts ruled that "the *Klinghoffer*

19 weekly average method ignores the plain language of the minimum wage provision and

20 undermines the FLSA's primary purpose of ensuring a fair wage for workers." *Id.* at 23.

21 Moreover, Plaintiffs argue that *Klinghoffer* was "effectively superseded by regulation" when the

22 Department of Labor issued 29 C.F.R. § 778.318. (Dkt. No. 275 at 21.)

23       Upon independent review, this Court finds that, indeed, most decisions relying on the

24 *Klinghoffer* weekly average rule have failed to meaningfully examine whether the rule

25 effectuates the protections of the FLSA. *See Lundy v. Catholic Health System of Long Island,*

26 *Inc.*, 711 F.3d 106, 115 (2nd Cir. 2013) (asserting that an employee does not have an FLSA

minimum wage claim "unless the average hourly wage falls below the federal minimum wage.");

*U.S. Dep't of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 780 (6th Cir. 1995) (adopting the weekly

average rule based simply on what, "several courts have held"); *Hensley v. MacMillan Bloedel*

*Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (citing to *Klinghoffer* without analysis);

*Blankenship v. Thurston Motor Lines*, 415 F.2d 1193, 1198 (4th Cir. 1969) (holding, without

citation or analysis, that *Klinghoffer* "contains a correct statement of the law").

Moreover, the oft-cited portion of the *Klinghoffer* decision itself does not analyze the

statutory language of the FLSA, though it does address legislative history. *Klinghoffer* provides,

in relevant part:

> If the total wage paid to each guard in this case during any given week is divided
> by the total time he worked that week, the resulting average hourly wage exceeds
> $1.00 for every week and every guard involved. We believe this is all that is
> necessary to meet the requirements of 206(a). The Congressional purpose
> underlying that section was to guarantee a minimum livelihood to the employees
> covered by the Act. Payment at intervals shorter than weekly is unusual and is not
> necessary to enable the employees to meet their customary obligations.
> Accordingly the Congressional purpose is accomplished so long as the total
> weekly wage paid by an employer meets the minimum weekly requirements of
> the statute, such minimum weekly requirement being equal to the number of
> hours actually worked that week multiplied by the minimum hourly statutory
> requirement.

*Klinghoffer*, 285 F.2d at 490.

While the majority of caselaw adopted *Klinghoffer* without discussion, the D.C. Circuit's

opinion in *Dove v. Coupe* represents an exception. 759 F.2d 167 (D.C. Cir. 1985). In *Coupe*, the

D.C. Circuit considered whether hour-by-hour or week-by-week compliance with the minimum

wage was necessary under the FLSA. *Id.* at 171–72. "While the minimum wage laws logically

could be construed as requiring hour-by-hour compliance, both administrative and judicial

decisions established the workweek as the measuring rod for compliance at a very early date."

*Id.* at 171 (internal citation omitted). The D.C. Circuit considered statements issued by the

Department of Labor's Wage and Hour Division, while acknowledging that courts could

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT FOR DEFENDANTS
PAGE - 6

1   interpret the statute differently,[2] in adopting the *Klinghoffer* "workweek measuring rod." *Id.* As

2   represented by the present dispute, "the language of the federal . . . minimum wage provision[] is

3   open to the interpretation that the drivers urge." *Id.* As outlined below, this Court is not inclined

4   to make its ruling with respect to the FLSA protections afforded to low-wage workers based on

5   momentum—however longstanding—alone.

6

7   **2.      Ninth Circuit Treatment of *Klinghoffer***

8           The Ninth Circuit does not appear to have completely adopted *Klinghoffer*. Only once has

9   the Ninth Circuit cited to the weekly average rule provision, in *Adair v. City of Kirkland*, as part

10  of explanatory dicta regarding the term "gap time." 185 F.3d 1055, 1062 n. 6 (9th Cir. 1999).

11  *Adair* dealt with whether police officers' salaries compensated them for required ten-minute

12  briefings before the start of their shifts. *Id.* at 1058–59. The Court found that "the district court

13  properly rejected any minimum wage claim the officers might have brought by finding that *their*

14  *salary*, when averaged across their total time worked, still paid them above minimum wage." *Id.*

15  at 1063 (emphasis added). Neither party contends that the ABC plan is a salary.[3] The remaining

16  Ninth Circuit cases to cite *Klinghoffer* did not pertain to the workweek measurement in

17  establishing adequate pay under the FLSA.[4]

18          Other district courts in the Ninth Circuit have read *Adair* as a wholesale adoption of the

19  _____

20  [2] The General Counsel for the Wage and Hour Division issued a statement in 1940 that, "[T]he courts might take a period less than a workweek as the standard under [29 U.S.C. § 206], but ... until directed otherwise by authoritative ruling of the courts, the Division will take the workweek as the standard for determining whether there has been

21  compliance with the law." *Id.* (citing Wage & Hour Release No. R–609 (Feb. 5, 1940), reprinted in 1942 Wage Hour Manual (BNA) 185).

22  [3] The Court considers the ABC plan to be more closely analogous to a commission-based system, which the Northern District of California discussed in *Balasanyan v. Nordstrom, Inc.*, 913 F.Supp.2d 1001 (N.D. Cal. 2012).

23  While the *Balasanyan* Court, as discussed below, problematically adopted *Klinghoffer*, it similarly found that plaintiffs were paid in an FLSA-complaint manner due to the availability of supplemental pay if their commission

24  did not reach the minimum wage. *Id.* at 1009.

    [4] *Biggs v. Wilson*, 1. F.3d 1537, 1542 (9th Cir. 1993), dealt with whether an FLSA violation occurs because an

25  employee is not paid on her regular payday; *Wren v. Sletten Const. Co.*, 654 F.2d 529, 535 (9th Cir. 1981) cites a portion of *Klinghoffer* pertaining to overtime payments; and *U.S. v. Moody*, 778 F.3d 1537, 1542 (9th Cir. 1985) and

26  *Odgen v. U.S.*, 303 F.2d 724, 745 n. 27 (9th Cir. 1962) were criminal cases citing *Klinghoffer* for a procedural principle.

*Klinghoffer* rule. In *Balasanyan v. Nordstrom, Inc.*, the Southern District of California asserted, without citation, that the Ninth Circuit had adopted *Klinghoffer*. 913 F.Supp.2d 1001, 1009–1010 (S.D. Cal. 2012). The decision adopted the weekly average rule "most importantly" because it found *Klinghoffer* to have been adopted by the Ninth Circuit, but also on independent grounds, including that "the hour-by-hour method is less effective when analyzing varying forms of compensation, including commissions," and that "[n]o conclusive evidence indicates that Congress intended the hour-by-hour method to be used instead of the weekly average method." *Id.* At least three times, the District of Arizona similarly reasoned that "[t]he Ninth Circuit has followed the 'workweek' concept established in *Klinghoffer* for FLSA minimum wage violations." *Montijo v. Romulus, Inc.*, 2015 WL 1470128 at *8 (March 30, 2015); *Richardson v. Mountain Range Restaurants, LLC*, 2015 WL 1279237 at *5 (March 20, 2015); *Schaefer v. P.F. Chang China Bistro, Inc.*, 2014 WL 3809069 at *5 (Aug. 1, 2014) (all citing *Adair*, 185 F.3d at 1063). And the District of Oregon, using identical language as that in the Arizona cases, has construed *Adair* as an adoption of the "workweek" concept in *Klinghoffer* outside of the salary context. *McElmurry v. U.S. Bank Nat. Ass'n*, 2005 WL 2078334 at *4 (Aug. 24, 2005).

With all due deference to its sister courts, this Court not find *Adair* to represent a wholesale adoption of the *Klinghoffer* rule. The footnote in *Adair* acknowledging the *Klinghoffer* weekly average rule is dicta, as the "gap time" discussed in that footnote was not at issue. Moreover, the above-captioned matter does not involve salaries and is therefore not bound by the holding in *Adair*.

Moreover, the Ninth Circuit's later decision in *Ballaris v. Wacker Siltronic Corp*. casts doubt on the notion that the Ninth Circuit has adopted the *Klinghoffer* weekly average rule. 370 F.3d 901 (9th Cir. 2004). In *Ballaris*, the Ninth Circuit addressed what activities counted as "work" time for the purposes of calculating overtime wages owed under the FLSA. *Id.* A former plant worker sued based on his company's pay structure that failed (1) to pay for the time changing into and out of required plant uniforms, (2) to adequately pay overtime wages based on

1    these miscalculations, and (3) to adequately pay overtime wages based impermissibly crediting

2    paid lunch time against overtime compensation. *Id.* at 903. The Ninth Circuit found that (1) the

3    paid lunch periods did not need to be factored into overtime as they constituted an additional

4    benefit rather than compensation for "hours worked," (2) changing in and out of a plant uniform

5    constituted "work" that required compensation, and (3) the position that an employer may credit

6    payment provided for paid lunch breaks against its obligation to pay for overtime hours worked

7    was "untenable." *Id.* at 909–913.

8              Of particular relevance to the Court's inquiry here is the fact that time spent waiting for

9    incoming phone calls is properly considered "work." "[T]he term "work," as used in the FLSA,

10   includes even "non-exertional acts." *Id.* at 911 (citing *Armour & Co. v. Wantock,* 323 U.S. 126,

11   133 (1944) (noting that "an employer . . . may hire a man to do nothing, or to do nothing but wait

12   for something to happen.")). And, in stating that "it would undermine the purpose of the FLSA if

13   an employer could use agreed-upon compensation for non-work time (or work time) as a credit

14   so as to avoid paying compensation required by the FLSA," the Ninth Circuit may have

15   functionally rejected the workweek average rule from *Klinghoffer. Id.* at 914.

16   **3.      The *Norceide* Approach**

17             A minority approach to measuring FLSA minimum wage compliance—an approach

18   urged by Plaintiffs in this case—was set forth by the District of Massachusetts in *Norceide v.*

19   *Cambridge Health Alliance*, 814 F. Supp.2d 17 (D. Mass. 2011). In *Norceide*, District Judge

20   Gerner held that "the *Klinghoffer* weekly average method ignores the plain language of the

21   minimum wage provision and undermines the FLSA's primary purpose of ensuring a fair wage

22   for workers." *Id.* at 23.

23             In so ruling, the *Norceide* Court discussed several factors. First, the statutory language of

24   the FLSA plainly discusses an hourly, not a weekly wage. *Norceide*, 814 F.Supp.2d at 23.

25   ("[T]he only metric Congress envisioned was the hour, with each hour having its own discrete

26   importance.") Second, Congress specifically mentioned a "workweek" in other parts of the

statute to determine entitlement for protections, most especially overtime. *Id.* at 24. This

distinction between the provisions discussing hourly wages and workweek structure, Judge

Gerner reasoned, was not meaningless: "When Congress meant to use the word 'workweek' it

did so. When it meant to use 'hour' that was the word it used." *Id.* Third, the legislative history

and intent—unequivocally to support fairness and protections for workers—supports a reading of

the FLSA that requires payment of minimum wage for every hour worked. *Id.* at 24–25 (citing

H.R. Rep. No. 75-2738 (1938); Sen. Rep. No. 75-884 (1937); H.R.Rep. No. 75-1452 (1937); 81

Cong. Rec. 4983 (1937)).

4.      **29 C.F.R. § 778.318**

        In determining how to measure minimum wage compliance, the Court also considers the

FLSA provisions regarding piecework plans and agreements regarding productive work. In some

circumstances, the FLSA requires employers to pay employees for non-productive hours. 29

C.F.R. § 778.318. The Act "allows employers to compensate employees at a lower rate than

normal for waiting time, but employers must pay at least minimum wage even for unproductive

time." *Olivo v. Crawford Chevrolet Inc.*, 799 F. Supp. 2d 1237, 1241 (D.N.M. 2011) (citing 29

C.F.R. § 778.318(b)). The Code of Federal Regulations provides:

> Some agreements provide for payment only for the hours spent in productive
> work; the work hours spent in waiting time, time spent in travel on the employer's
> behalf or similar nonproductive time are not made compensable and in some cases
> are neither counted nor compensated. Payment pursuant to such an agreement will
> not comply with the Act; such nonproductive working hours must be counted and
> paid for . . .
>
>  . . . [W]hile it is not proper for an employer to agree with his pieceworkers that
> the hours spent in down-time (waiting for work) will not be paid for or will be
> neither paid for nor counted, it is permissible for the parties to agree that the pay
> the employees will earn at piece rates is intended to compensate them for all hours
> worked, the productive as well as the nonproductive hours. If this is the
> agreement of the parties, the regular rate of the pieceworker will be the rate
> determined by dividing the total piecework earnings by the total hours worked
> (both productive and nonproductive) in the workweek. Extra compensation (one-
> half the rate as so determined) would, of course, be due for each hour worked in

excess of the applicable maximum hours standard.

29 C.F.R. § 778.318(a), (c).

Defendants argue that the ABC plan does not run afoul of 29 C.F.R. § 778.318 because it represents a circumstance where the employer and employees have agreed that payment under the ABC plan "is intended to compensate them for all hours worked, the productive as well as the nonproductive hours." (Dkt. No. 279 at 13.) Plaintiffs, on the other hand, argue that the ABC plan violates the FLSA because it allows Defendants to pay employees "only for the [time] spent in productive work" which is contrary to the FLSA as stated in 29 C.F.R. § 778.318(a). Neither side is entirely accurate.

This Court has already determined that the ABC plan is not a piecework plan. *See Hill v. Xerox*, 2014 WL 3396098 at *3–4; C12-0717-JCC at Dkt. No. 116, 4–6. Even if it had ruled otherwise, the Court does not find the ABC plan to be structured in the way mandated by the piecework provision of the regulation: "the regular rate of the pieceworker will be the rate determined by dividing the total piecework earnings by the total hours worked (both productive and nonproductive) in the workweek." 29 C.F.R. § 778.318(c). The ABC plan generated pay rates differently, based "on the quality of [an employee's] work, as determined by such "qualitative and efficiency measures" as whether an agent resolved a customer's issue. (Dkt. No. 273 at 4, 12, and 27.) The Court notes, however, that the "agreement" section of 29 C.F.R. § 778.318 is not limited to piecework plans; the regulation specifically notes that piecework plans are offered as an example. 29 C.F.R. § 778.318(c).

However, Plaintiffs' assessment of the ABC plan is similarly misleading: the plan does not *only* compensate employees for hours spent in productive time, but also provides additional pay for trainings and meetings (at an hourly rate) and subsidy pay to ensure that their total pay never falls below the minimum wage based on the hours worked—productive or otherwise—in a given week. (Dkt. No. 87 at 6; Dkt. No. 111 at 12.)

**5.     The Court Departs From *Klinghoffer*, But Still Finds no Minimum Wage Violation**

Upon examination of the relevant precedent and the statutory language, this Court declines to impose the *Klinghoffer* rule as the measurement of FLSA compliance. In reaching this conclusion, the Court emphasizes several factors.

First, *Klinghoffer* was a criminal case in which the Second Circuit reviewed jury convictions for violating the FLSA's minimum wage and overtime provisions. 285 F.2d 487, 489–90. In creating the weekly average rule, the Second Circuit did not examine the language of § 206 of the FLSA. (*Id.*) Nor did the Court acknowledge the broad construction afforded the FLSA as a remedial statute. *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993). Moreover, the very argument that *Klinghoffer* rejected,[5] "that payments for certain hours in excess of the statutory minimum cannot be reallocated to make up for deficiencies in payments made for other hours during the week," is the essence of the Ninth Circuit's holding in *Ballaris. Klinghoffer*, 285 F.2d at 493; *Ballaris*, 370 F.3d at 909–913. Finally, this Court agrees with the *Norceide* decision's rationale that "[w]hen Congress meant to use the word 'workweek' it did so. When it meant to use 'hour' that was the word it used." *Norceide*, 814 F.Supp.2d at 24.

In other words, this Court determines that the appropriate measure for FLSA compliance is whether an employee is paid the minimum wage for every hour he or she worked. However, while the Court adapts the legal approach for which Plaintiffs advocate, it still enters partial summary judgment in Defendants' favor. In so finding, the Court is particularly persuaded by the availability of subsidy pay under the ABC plan.

While this Court finds that 29 U.S.C. § 206 requires Defendants to have paid Plaintiffs the minimum wage for each hour worked, regardless of productivity, it also finds that the ABC plan compensated employees in an FLSA-compliant manner. In so ruling, the Court is particularly persuaded by the availability of subsidy pay. The subsidy pay ensured that, as an absolute floor, employees paid under the ABC plan were to

---

[5] The Court briefly notes that the *Klinghoffer* decision took no issue with the authority cited to reach this argument, but concluded that the meaning of those cases "cannot be stated so broadly." 285 F.2d at 493.

1   receive *at least* the federal minimum wage multiplied by the number of hours worked,

2   regardless of whether those hours were productive or unproductive. (*See* Dkt. No. 272 at

3   3–9.) If an employee were in actual jeopardy of not receiving minimum wage for every

4   hour worked, subsidy pay would kick in and ensure such pay was received. Based on the

5   record before the Court, neither named Plaintiff was ever in such jeopardy: they both

6   received at least the minimum wage for all hours, productive or otherwise, worked during

7   the recorded timeframe. (*Id.*)

8          Minimum wage pay for every hour worked, as required by the FLSA, was

9   provided under the ABC plan. Accordingly, no minimum wage violation occurred.

10         As an additional basis for its ruling, the Court reads the language of the ABC

11  plan, coupled by Plaintiffs' own testimony, as demonstrating an understanding between

12  Defendants and their employees that payment under the ABC plan would compensate

13  "for all hours worked." (*See* Dkt. No. 274-1 at 15, 52.) 29 C.F.R. § 778.318(c) further

14  supporting entry of partial summary judgment for Defendants.

15  **C.     Overtime**

16         In addition to the minimum wage requirement, under the FLSA, employers must pay

17  employees who work more than 40 hours in a week, "at a rate not less than one and one-half

18  times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Plaintiffs allege that

19  "[w]hile employed by Defendants, Plaintiffs and proposed class members performed overtime

20  work for which no additional compensation was paid to them. Defendants failed to pay Plaintiffs

21  and proposed class members one and one-half times their regular rates of pay for hours worked

22  in excess of forty hours per week in violation of 29 U.S.C. § 207." (Dkt. No. 1 at 7–8.)

23         Proper overtime pay requires that an employee be paid in full for "all straight time hours

24  worked." *Donovan v. Crisostomo*, 689 F.2d 869, 876 n. 13 (9th Cir. 1982).

25         The Court's ruling that the ABC plan properly compensated Plaintiffs for all straight time

26  hours worked is dispositive of Plaintiffs' overtime claim. *See, e.g., Monahan v. County of*

*Chesterfield, Va.*, 95 F.3d 1263, 1273 (4th Cir. 1996) (citing 29 C.F.R. § 315). "The only question that is relevant in assessing whether there has been a violation of the FLSA is whether overtime was correctly calculated based on an appropriately determined 'regular rate.'" *Parth v. Pomona Valley Hosp. Med. Center*, 2007 WL 9193688, at *10 (C.D. Cal. 2007), *aff'd*, 630 F.3d 794 (9th Cir. 2010).

      The Court concludes that the ABC plan properly paid overtime by dividing an employee's total non-overtime compensation by total hours in a workweek[6] to generate an average rate and providing time-and-a-half compensation based on that rate. (Dkt. No. 273 at 5.) No violation of the FLSA overtime provision occurred.

## III. CONCLUSION

      For the foregoing reasons, Defendant's motion for Partial Summary Judgment (Dkt. No. 271) is GRANTED. Plaintiffs' Cross-motion for Partial Summary Judgment (Dkt. No. 276) is DENIED.

      DATED this 1st day of December 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[6] The Court employs the workweek measurement not to suggest that minimum wage payments need not be compliant for every hour worked, but concludes that the FLSA's use of the word "workweek" to calculate overtime eligibility and payments was intentional. *See* 29 U.S.C. § 207(a)(1). (Overtime kicks in during "a workweek longer than forty hours.")