FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KRISTY DOUGLAS; TYSHEKA RICHARD, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, v. XEROX BUSINESS SERVICES, LLC, a Delaware limited liability company; LIVEBRIDGE, INC., an Oregon corporation; AFFILIATED COMPUTER SERVICES, INC., a Delaware corporation; AFFILIATED COMPUTER SERVICES, LLC, a Delaware limited liability company, *Defendants-Appellees*. | No. 16-35425  D.C. No. 2:12-cv-01798-JCC  OPINION |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted July 12, 2017
Seattle, Washington

Filed November 15, 2017

Before:  Michael R. Murphy,[*] M. Margaret McKeown, and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge McKeown

**SUMMARY**[**]

**Labor Law**

The panel affirmed the district court's summary judgment in favor of the defendants in an action brought by call center workers under the Fair Labor Standards Act.

Joining other circuits, the panel held that the relevant unit for determining minimum-wage compliance under the FLSA is the workweek as a whole, rather than each individual hour within the workweek. Under the workweek standard, defendants complied with the minimum-wage provision.

**COUNSEL**

Daniel Foster Johnson (argued), Breskin Johnson & Townsend PLLC, Seattle, Washington; Toby J. Marshall and Marc C. Cote, Terrell Marshall Law Group PLLC,

---

[*] The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Seattle, Washington; Jon W. MacLeod, MacLeod LLC, Seattle, Washington; for Plaintiffs-Appellants.

Patrick Michael Madden (argued) and Todd L. Nunn, K&L Gates LLP, Seattle, Washington, for Defendants-Appellees.

**OPINION**

McKEOWN, Circuit Judge:

In this appeal, we address an issue of first impression in our circuit regarding the minimum-wage provision of the Fair Labor Standards Act ("FLSA"). Specifically, we consider whether the relevant unit for determining minimum-wage compliance is the workweek as a whole or each individual hour within the workweek. Although the statutory text and context do not conclusively answer this question, we are persuaded by the powerful history of administrative and judicial decisions that have adopted the per-workweek approach since the passage of the FLSA in 1938. We join our sister circuits and embrace the per-workweek measure.

**Background**

Kristy Douglas and Tysheka Richard worked as customer service representatives at call centers run by Xerox Business Services, LLC ("Xerox"). Their main task was to answer incoming calls from Verizon Wireless customers and field questions, but they made outbound calls and also performed call follow-up work. Like any office job, their duties also entailed various administrative tasks, such as attending trainings and meetings and monitoring work-related announcements and email.

Under Xerox's mind-numbingly complex payment plan, employees earn different rates depending on the task and the time spent on that task. For certain defined activities (such as trainings and meetings), employees receive a flat rate of $9.04 per hour. From there, things get complicated. Time spent managing inbound calls is paid at a variable rate, calculated based on a matrix of qualitative controls (*e.g.*, customer satisfaction) and efficiency controls (*e.g.*, length of calls). The wage ranges anywhere from $0.15 to $0.25 per minute (*i.e.*, from $9.00 to $15.00 per hour). The parties dispute whether tasks other than receiving incoming calls also qualify for the variable rate, but fortunately we need not resolve that dispute here.

All remaining tasks have no specific designated rate. At the end of a workweek, Xerox sums the amounts earned for defined activities and for activities paid at the variable rate and divides that total by the number of hours worked that week. If the resulting hourly wage equals or exceeds minimum wage, Xerox does not pay the employee anything more. However, if the ratio falls below minimum wage, Xerox gives the employee subsidy pay to bump the average hourly wage up to minimum wage. In this way, subsidy pay ensures that, from the perspective of each workweek, employees always receive the appropriate hourly minimum wage.

Douglas and Richard brought an action on behalf of a class of similarly situated employees (collectively, the "Employees"), alleging that Xerox's payment plan violates the FLSA's minimum-wage and overtime provisions. The Employees claim that the FLSA measures compliance on an hour-by-hour basis and does not allow averaging over a longer period. In their view, because Xerox averages across a workweek, it compensates above minimum wage for some

hours and below minimum wage for others, thereby violating the FLSA.

The district court disagreed. Initially, the court rejected Xerox's per-workweek approach and accepted the Employees' per-hour approach but still ruled for Xerox on summary judgment. On reconsideration, the court explained that it was looking to Xerox's payment plan to determine FLSA compliance. Because that contract specified that subsidy pay was calculated on a weekly basis, the court held that workweek averaging was appropriate and that Xerox did not violate the FLSA. The district court certified the minimum-wage and overtime claims for interlocutory appeal under 28 U.S.C. § 1292(b), and we granted permission to appeal.

## Analysis

The issue presented is a pure question of statutory interpretation—when gauging compliance with the FLSA's minimum-wage provision, is it permissible to use the workweek as the unit of measure? Because of the statute's breadth, we are left with few answers after examining its "text, structure, and purpose." *Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1138 (9th Cir. 2017). Ultimately, the Department of Labor's longstanding per-workweek construction and the steady stream of circuit cases that have adopted that understanding shape our decision.

Little can be gleaned from the statutory text. The operative provision, 29 U.S.C. § 206(a)(1)(C), states that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce . . . not less than . . . $7.25 an hour." Although the statute sets the minimum wage that employees must be paid each hour, it does not

definitively prescribe the computation period or say that the only permissible measure is the hour. Rather, the statute is open to an interpretation allowing for averaging over a longer period of time, like a day or a week. By using the phrase "in any workweek," the text signals that something other than an hour could be a relevant measure.[1] The language alone does not answer the question before us.

Nor do surrounding statutory provisions provide much help. The Employees direct our attention to the overtime provision, which in certain circumstances calculates an overtime rate by multiplying the "employee's average hourly earnings for the workweek" by one and a half. 29 U.S.C. § 207(a)(1), (g). However, that provision's explicit reference to workweek averaging provides minimal guidance because the considerations at issue cut both ways. Congress's use of the per-workweek measure in the overtime provision but not the minimum-wage provision could be read as exclusive. But it is equally logical to conclude that inclusion of the per-workweek measure in the overtime provision means that the workweek is an acceptable compliance measure for FLSA provisions worded broadly enough to embrace it. For the same reasons, we cannot extract anything more from the multiple FLSA provisions and regulations that employ various units of time. As a textual and contextual matter, the minimum-wage provision can bear both the per-hour and the per-workweek meaning.

---

[1] We cannot infer anything stronger from the "in any workweek" language because it appears as part of a prefatory clause that determines applicability of the minimum-wage requirement, not compliance with the minimum-wage requirement. *See Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993).

Even the FLSA's purpose is unilluminating because neither the per-hour nor the per-workweek measure offends the underlying statutory goals. In the FLSA's purpose provision, Congress explained that it sought to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The Supreme Court's gloss indicates that the minimum-wage provision "protect[s] certain groups of the population from substandard wages" due to "unequal bargaining power." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *see also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (explaining that the FLSA ensures that covered employees receive "[a] fair day's pay for a fair day's work" and avoids "the evil of 'overwork' as well as 'underpay'" (citation omitted)). Both measures accomplish the stated goal: employees receive compensation for every hour worked at a rate no less than the congressionally prescribed minimum hourly wage to guarantee the bare necessities of life.

Because the traditional tools of statutory construction do not conclusively resolve the per-hour versus per-workweek question, we turn to other considerations. Immediately we are confronted with the interpretation of the Department of Labor—the agency charged with administering the FLSA—which "established the workweek as the measuring rod for compliance at a very early date." *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985) (Ginsburg, J.). As the Supreme Court has recognized, such a "longstanding administrative construction" counsels in favor of interpreting a statute to support the construction, at least when reliance interests are at stake. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 457–58 (1978); *see McLaren v. Fleischer*, 256 U.S. 477, 481 (1921). And the Court has singled out contractual matters as

8     DOUGLAS V. XEROX BUSINESS SERVICES

an area where reliance interests are implicated. *See Payne v. Tennessee*, 501 U.S. 808, 828 (1991).

The Department of Labor adopted the per-workweek measure just over a year and a half after the statute was passed in 1938. The General Counsel of the Wage and Hour Division issued a policy statement providing that "[f]or enforcement purposes, the Wage and Hour Division is at present adopting the workweek as the standard period of time over which wages may be averaged to determine whether the employer has paid the equivalent of [the minimum wage]." Wage & Hour Release No. R–609 (Feb. 5, 1940), *reprinted in* 1942 Wage Hour Manual (BNA) 185. The General Counsel acknowledged that the statute could be read to support a per-hour measure but concluded that "until directed otherwise by an authoritative ruling of the courts, the Division will take the workweek as the standard for determining whether there has been compliance with the law." *Id.*

Although the per-workweek measure has never been promulgated as a regulation, counsel for the Employees admitted at oral argument in this appeal that he could not identify any decision where the Wage and Hour Division has deviated from this understanding. Oral Arg. at 5:22–6:32, *Douglas v. Xerox Bus. Servs., LLC*, No. 16-35425 (9th Cir. July 12, 2017), http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000011913; *see also Dove*, 759 F.2d at 172 ("[T]he Wage and Hour Division continues to adhere to [the per-workweek measure.]"). Other Department of Labor sources confirm the agency's adherence to the per-workweek measure. The Field Operations Handbook is explicit that "an employee subject to section 6 of FLSA is considered to be paid in compliance if the overall earnings for the [workweek] equal or exceed

the amount due at the applicable [minimum wage]." And the Department of Labor's website states in no uncertain terms that "[t]he workweek is the basis on which determinations of . . . compliance with the wage payment requirements of the FLSA are made." eLaws – FLSA Overtime Calculator Advisor, U.S. Dep't of Labor, http://webapps.dol.gov/elaws/whd/flsa/otcalc/glossary.asp?p=workweek (last visited Sept. 6, 2017).

Courts have overwhelmingly followed the agency's guidance. On the heels of the agency's 1940 policy statement, the Western District of Kentucky accepted the Department of Labor's construction. *Travis v. Ray*, 41 F. Supp. 6, 9 (W.D. Ky. 1941). The court recognized that "[t]he statute does not expressly provide for any unit of time over which the amount of compensation received can be averaged against the number of hours worked, in order to determine whether or not the average compensation per hour equals the minimum wage provided" but held that the agency's choice of the workweek was permissible and appropriate. *Id.*

Since then, the Second, Fourth, Eighth, and D.C. Circuits have embraced the per-workweek construction. *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove*, 759 F.2d at 171. As the Second Circuit explained early on, "the [c]ongressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute." *Klinghoffer*, 285 F.2d at 490. The other circuits have followed the Second Circuit's lead, agreeing "that the workweek standard generally represents an entirely reasonable reading of the

statute." *Dove*, 759 F.2d at 172. No circuit has taken a contrary position.[2]

Recognizing that "uniformity among the circuits in matters having general application to the various states is preferable as long as individual justice is not sacrificed," *Maniar v. FDIC*, 979 F.2d 782, 785 (9th Cir. 1992), we see no reason to depart from the sound reasoning of the other circuits. In this case, we favor consistency because businesses subject to the FLSA, like Xerox, often operate in multiple jurisdictions and could reasonably rely on administrative and judicial guidance in structuring their payment schemes. To upset those practices by imposing different requirements in different jurisdictions would be burdensome and impractical, and the Employees have not identified any counterbalancing equitable concerns or statutory directives to tip the scales to the per-hour measure.

Adoption of the per-workweek approach is also reinforced by the fact that Congress has done nothing to overturn or disapprove of this clearly articulated position, though it has amended the minimum-wage provision since the agency proclamation and court rulings. The original version of the minimum-wage provision read: "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages . . . not less than 25 cents an hour." Fair Labor

---

[2] Nor does it seem that the legal tide is turning in the lower courts. Apart from the district court in this case, we have identified only two other district courts that have rejected the per-workweek measure, and those courts selected conflicting units of measure. *Compare D'Arezzo v. Providence Ctr., Inc.*, 142 F. Supp. 3d 224, 228 (D.R.I. 2015) (adopting a contract-based approach), *with Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 25 (D. Mass. 2011) (adopting a per-hour approach).

Standards Act of 1938, Pub. L. No. 75-718, § 6(a)(1), 52 Stat. 1060, 1062. In the ensuing decades, Congress has tinkered with that language, including by modifying the introductory phrase to add a reference to the workweek in 1961 and by periodically upping the hourly minimum-wage amount. *See* An Act to Amend the Fair Labor Standards Act of 1938, Pub. L. No. 87-30, § 5(a)(1)–(2), 75 Stat. 65, 67 (1961) (inserting the "in any workweek" language); *compare, e.g.*, 29 U.S.C. § 206(a)(1)(A) (2007) ("$5.85 an hour"), *with id.* § 206(a)(1) (1996) ("$4.25 an hour"), *with id.* § 206(a)(1) (1989) ("$3.35 an hour").

That Congress has made changes to the minimum-wage provision without disturbing the explicit agency and judicial decisions is not without significance. "[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (internal quotation marks and citation omitted); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 159 (2013) (finding significant that Congress amended the relevant statutory provision six times while "leaving untouched" and not "express[ing] disapproval of" the agency interpretation). The legislative action provides an even stronger foundation to read the minimum-wage provision to preserve, not upset, the entrenched per-workweek measure.

These robust considerations overcome the notion that "[t]he FLSA is [to be] construed liberally in favor of employees," *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005), even assuming that the liberal-construction policy applies with full force in cases related to

12    DOUGLAS V. XEROX BUSINESS SERVICES

compliance rather than applicability, *see Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (providing that "exemptions [from FLSA coverage] are to be narrowly construed against the employers"). We also note that the Employees cite no empirical evidence that broad application of the workweek standard disadvantages employees so long as they ultimately receive the stipulated hourly rate.

The preference for national uniformity also suffices to reject the district court's resort to Xerox's contract to determine compliance with the FLSA. On appeal, no party wholeheartedly defends the district court's "contract measuring rod" approach, and for good reason. Not only does the minimum-wage provision nowhere mention the underlying employment contracts, but such an approach would wreak havoc by tying compliance to the whims of employers and obligating courts to parse through complicated payment schemes. Xerox's convoluted payment plan showcases why the "contract measuring rod" approach is difficult to administer: Xerox alternates between per-hour and per-minute pay, and the parties hotly dispute whether the plan is properly characterized as hourly, piecework, or commission-based.[3] Rather than subjecting district courts to this morass of individualistic determinations, we think the proper course is to join our sister circuits, which have adopted the per-workweek

---

[3] We note that a different panel of our court certified a contract-related question to the Washington State Supreme Court. This issue does not affect the FLSA analysis. *See Hill v. Xerox Bus. Servs., LLC*, 868 F.3d 758, 762–63 (9th Cir. 2017) (certifying the question whether Xerox's plan is properly classified as "an hourly plan" or "a piecework plan" under Washington law).

DOUGLAS V. XEROX BUSINESS SERVICES 13

measure as a feasible and permissible interpretation of the statute.[4]

The pertinent discussion from our circuit's cases fortifies the workweek conclusion we reach here. We have gestured favorably to the per-workweek measure in dicta where we stated that "the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked," citing the per-workweek rulings of the Second and Eighth Circuits. *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999). Although *Adair*'s statement may not be binding, it supports choosing the per-workweek measure.

Our later decision in *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004), is not to the contrary. The employer there contended as a matter of "litigation strategy" that its payment for a half-hour lunch period could cancel out its unlawful failure to pay for time spent donning and doffing plant uniforms. *Id.* at 912 & n.15. We rejected that litigation offset approach, emphasizing that employees must be paid for all hours worked and concluding that the FLSA does not permit "[c]rediting money already due an employee for some other reason against the wage he is owed." *Id.* at 914. In our case, Xerox is not asserting that it can take money already due and apply it against unpaid hours to avoid

---

[4] Supreme Court precedent countenances converting between disparate units of measure. In *United States v. Rosenwasser*, 323 U.S. 360 (1945), the Court explained that although Congress had to "create practical and simple measuring rods to test compliance" and did so "by setting the standards in terms of hours and hourly rates," non-hourly "measures of work and compensation are not thereby voided or placed outside the reach of the [FLSA]." *Id.* at 364. Instead, they "must be translated or reduced by computation to an hourly basis for the sole purpose of determining" FLSA compliance. *Id.*

14          DOUGLAS V. XEROX BUSINESS SERVICES

an FLSA violation. Instead, Xerox's payment plan compensates employees for all hours worked by using a workweek average to arrive at the appropriate wage.

Under the workweek standard, Xerox complied with the minimum-wage provision, and the Employees concede that their overtime claims rise or fall with their minimum-wage claims. *See* Oral Arg. at 16:50–17:23. We acknowledge the Employees' concern that by contract they expected to be paid at a rate different from the one they actually received. Whether they may have a contract claim is beyond the scope of this appeal. But the minimum-wage provision was not principally designed to address the implementation of individual, and sometimes obscure, payment schemes. Even if the Employees were confused by Xerox's payment plan, they still received the floor guaranteed by the congressionally established minimum wage.

**AFFIRMED.**